ABIJAH RICHARDSON, APPELLANT, v. IRA D. PRATT ET AL., APPELLEES.

1. **School Lands:** CONTRACT OF SALE: FORFEITURE: NOTICE One S. purchased certain school lands in 1869, paying one-tenth of the purchase price and interest to the following January. In 1870 he sold and assigned the receipt or certificate. The interest was paid on the land for the.years 1870 and 1871. Default having been made in the payment of the interest for the years 1872, 1873, 1874, and 1875, the treasurer of Otoe county, in which the land is situated, caused a notice to be published in a newspaper of that county, setting forth the facts of such delinquency, and requiring the removal thereof by the fulfillment of the covenant, etc., within thirty days. *Held*, The purchaser being absent from the ·state, that such notice was sufficient. *State v. Scott*, 17 Neb., 686.

2. ———: FAILURE TO MAKE PAYMENTS OF. INTEREST. While the failure to pay the interest on school land contracts on the day it becomes due does not work a forfeiture of the contract, yet the law requires good faith on the part of the purchaser, and a failure to pay such interest within the time required by statute, after notice of such delinquency, will bar the rights of the party.

APPEAL from the district court of Otoe county. Tried below before HAYWARD, J.

*Edwin F. Warren,* for appellant.

*D. T. Hayden,* for appellees.

MAXWELL, CH. J.

The plaintiff filed his petition in the district court of Otoe county, wherein he alleges—

1. That on the 24th day of June, 1869, one G. R. Swallow purchased at a public sale of school lands of Otoe county, at the court-house in Nebraska City, the north-east quarter of the north-west quarter of sec. No. 36, tp. 8, r. 11 e., for the sum of $320, and then paid to James Thorn, then treasurer of said county, on account of same, one-tenth of purchase price, to-wit, $32; received duplicate certificates of purchase receipts therefor; that said Swallow thereupon made and delivered to said Thorn, as treasurer, his note for the remaining nine-tenths of purchase money, due in ten years thereafter, with interest at ten per cent per annum; that said Swallow paid said Thorn, as such treasurer, interest on said note for the years 1869, 1870, and 1871, amounting respectively to sum of $14.80, $28, and $28, and took the treasurer's receipt therefor.

2. That subsequently said Swallow duly sold, endorsed, assigned, transferred, and set over to plaintiff said certificate of purchase, and all his right, title, and interest therein; that ever since the plaintiff has been and still is the owner and holder thereof; that said plaintiff is the owner in fee simple of the lands described in said certificates, subject to the claim of the state of Nebraska, for the unpaid purchase money and interest.

3. That on the 8th day of November, 1881, the defendant, Ira D. Pratt, took possession of said lands by virtue of an alleged or pretended lease thereof, purporting to be executed by the state of Nebraska through its agents, and now holds possession thereof thereunder; that plaintiff

has tendered to defendant, Duke W. Simpson, the treasurer of said county, payment in full of all arrearages of interest accrued on the said note, and requested said Simpson, as treasurer, to accept and receipt for the same; that said Simpson refuses so to do, alleging as a reason therefor that said lands have been subsequently leased by the state to defendant Pratt, and that he, as said treasurer, had no authority to accept and receipt for such payments.

Plaintiff in his petition tenders and offers to pay all sums due, and interest thereon, and tenders to Simpson as treasurer, and to Pratt, defendant, "full, complete, and perfect performance" of the provisions of law in that behalf enacted.

4. Plaintiff further alleges that no notice of any forfeiture of his said interest in said described lands, derived under said purchase, was ever given to said Swallow while he owned the certificates of sale, nor to plaintiff since he became owner therof; nor have any proceedings whatever at law or otherwise ever been taken by any person to annul or cancel such purchase, or to determine, or to invalidate the title, right of possession, or interest of said Swallow, or of plaintiff therein; that Swallow's note has not been surrendered, but is still held by the state or its officers.

Plaintiff prays an accounting of amount due for principal and interest on said note and taxes, if any, due the state on account of said purchase and sale; that plaintiff be permitted to pay the same into court for the use of the proper persons or authorities; that Simpson, as treasurer, or his successor, be required to receive and receipt for the same; that plaintiff may be decreed to be the owner of said tract of land—the ne. ¼ of nw¼, sec. 36, 8, 11, as against the claims of defendant Pratt, and all claiming under him; that the pretended lease held by Pratt, or other evidence of possession, be decreed void and of no effect as against plaintiff's title; that the same be removed as a cloud to plaintiff's title; that said Pratt be required to surrender

possession, and account for the rents and profits of the land since Nov. 8th, 1881, and for general relief and costs.

To this petition the defendant, Pratt, answered, admitting his lease of said land, and alleging that by the neglect and default of the plaintiff, and those under whom he claims, in failing to pay the interest on said note as it became due, he has forfeited his right to said land, as no part of said interest has been paid since 1871. The defendant also alleges that in the year 1875 the land, by reason of said default in payment of interest, was duly forfeited after due notice to the delinquent, and that thereafter the defendant obtained a lease of said land from the state, and entered into possession thereof, and has made valuable improvements thereon, in all of the value of $800. The reply is a general denial.

On the trial of the cause the court below found the issues in favor of the defendant, and dismissed the action. The plaintiff appeals.

The testimony shows that one George R. Swallow purchased the land in controversy from the state in the year 1869, and paid thereon one-tenth of the purchase money; that he gave the state a note for the residue; that some time in the year 1870 Swallow sold and assigned his receipt or certificate to one Cheney, who testifies that, "I paid him the par value of the certificate—*i.e.*, what he had paid upon the same, with the accumulated interest at ten per cent." He also testifies that he sold the same to the plaintiff about the year 1876, and "received from him the face of the paper and one-half of the interest I had paid out." Whether Mr. Cheney knew at the time of the sale that an attempt had been made the year previous to cancel the certificate does not appear. He swears, however, he was not served with notice. The proof also shows that Swallow, at the time of the purchase, was a non-resident of the state, and that Cheney and the plaintiff are also non-residents; and that no interest has been paid on said contract of purchase since 1871.

Sec. 17 of the act then in force for the registry, control, and disposition of school lands (General Statutes, 994–995) provided that, " The lessee shall give his or her obligation and contract that the lease money shall be fully and promptly paid annually in advance (the first payment being completed to the first of January ensuing); that no waste shall be committed upon the land," etc.

Sec. 18 provides that, " In case of the violation of any of the covenants in the contract furnished by the lessee or purchaser—by the non-payment of moneys at the time specified in the contract, by the commission of waste upon the land, by removal of any improvements thereupon from the land without the consent of the commissioners—the county treasurer shall notify the lessee or purchaser of his or her delinquency, and require the removal thereof by the fulfillment of the covenant of the bond and contract; and if such delinquency is not removed within thirty days the lessee or purchaser shall yield possession of the premises to the state of Nebraska, and the property shall thereupon immediately revert to and be re-vested in the state; and the contract shall be dissolved, and the right of the lessee or purchaser, both legal and equitable, therein be absolutely determined."

In 1875, as the interest had been in default for four years, and the residence of the purchaser or person claiming under him apparently unknown, a notice was published in one of the newspapers of Otoe county as follows:

"DELINQUENT LIST OF SCHOOL LANDS.

| DESCRIP. | SEC. | T'WN. | RANGE. | DATE OF SALE. | TO WHOM. |
|---|---|---|---|---|---|
| NE.¼ NW.¼ | 36 | 8 | 11 | June 25, '69 | G. R. Swallow |

" To all parties hereinabove named:

" You will take notice that unless payment shall be made on or before the fifth day of June, AD. 1875, of the inter-

est now due on a certain school land contract, bearing date as above stated, executed by James Thorn, then treasurer of Otoe county, to you, for the sale of all those pieces or parcels of common school land situated in Otoe county, Nebraska, described as above, east of the 6th principal meridian, according to the government survey, of which you are the owners, the said contract shall be dissolved, and said property shall thereupon revert to and be vested in the state of Nebraska, and your right, title, and interest therein will be absolutely terminated. Dated this 6th day of May, A.D. 1875, at the county treasurer's office, Otoe county, Nebraska.

"R. H. MILLER,

"*Treasurer Otoe County, Nebraska.*"

The principal question presented for the determination of the court is, whether or not such notice is sufficient. The affidavit of the printer shows that it was published for thirty days, and that the person claiming the land was required to pay on the thirtieth day after the first publication of the notice, and on the last day on which the notice was in fact published. And it is claimed that even if a notice by publication was authorized, yet that the purchaser or those claiming under him was entitled to thirty days after the completion of the publication in which to comply with its requirements. It is a sufficient answer to this objection to say that the statute does not require a publication of the notice for thirty days. One publication will fill the requirements of the law, and any additional publications are for the benefit of the purchaser. The statute merely requires notice to be given to the delinquent; but how the notice is to be given is not expressly provided. A personal notice is not required, although that is the most satisfactory, and should be given when the residence of the delinquent is known. In many cases, however, the residence of the several purchasers, when they do not reside on the land purchased, is unknown. This, no doubt, was

considered by the legislature; hence it was not required that notice be personally served, or sent to the residence of the delinquent, or that it be personal in any form, but simply that the treasurer "shall notify the party of his delinquency, and require the removal thereof by the fulfillment of the bond and contract."

In a number of cases—such as the location of a public road—the statute does not require personal notice, even where the parties reside on the land over which the road may be located. And if the conditions on which the right to locate the road depend have been complied with, the property of the citizen may be condemned and appropriated to public use without personal notice of any kind to the owner. There are a number of other cases in which property rights are affected where personal notice to the land owner is not required, which need not be referred to here. A purchaser of school lands is required to pay one-tenth of the principal at the time of purchase, and interest to the 1st day of January following the purchase, and thereafter the interest annually in advance. These are statutory requirements, hence a part of the contract, the conditions of which every purchaser accepts. The interest is necessary each year for the support of the common schools of the state, and can be used only for that purpose. If one person with impunity may refuse to pay the interest due for one year, every other purchaser may invoke the same rule and refuse to pay the amount due, and thus close up the common schools of the state, and defeat the purpose of the grant. But such is not the law. It requires reasonable diligence in the payment of the interest due, and does not encourage or approve of laxity in making such payments. But it does not provide that in case of failure to pay at the day that the estate of the purchaser shall cease. From sickness and various other causes the purchaser may be unable to obtain the amount required for interest at the time required, hence the law, out of

tenderness for his rights, requires notice to be given of such delinquency, and a reasonable opportunity given him to remove the delinquency. · But if the notice is not complied ·with within the time required by statute, the land will revert to the state, to be by it sold or leased to some one who will annually pay the interest or rent thereon, in order that the money thus derived may be used in the support of common schools; it was never intended by the legislature that a purchaser of school lands should be permitted to lie by for years to ascertain whether the purchase would be a profitable one or not; and if profitable, insist on a performance of the contract; if not, then abandon it. He must act in good faith, and use reasonable diligence in making payments of interest. If he fails to do so his rights in the premises may be determined upon notice as provided in the statute.

The question here presented was before this court in State v. Scott, 17 Neb., 686, to terminate a lease, and it was held that notice by publication was sufficient. We adhere to that decision, and it is decisive in this case. The rights of the plaintiff and all persons under whom he claims, were barred by the failure to comply with the terms of the notice of 1875, and since the year last mentioned neither he nor they have had any interest in said land. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.