## H. M. TRUEHART v. W. S. McMICHAEL.

1. A JUDGMENT AS EVIDENCE.—It is no objection to a decree of partition, when offered in evidence as a link to support plaintiff's title, that the proceedings upon which it was based are not shown, or that service on the parties is not shown, when the decree recites that the defendants were duly cited and made default.

2. TENANT IN COMMON MAY MAINTAIN TRESPASS TO TRY TITLE.— When suit is brought to recover land allotted to plaintiff in partition, his right to recover against a defendant showing no title, will not be defeated by showing the invalidity of the proceedings under which the partition was made.

3. LIMITATION—CONTINUITY OF POSSESSION.—When a defendant relies on the possession of others, anterior to his, to make out the term of ten years, required by art. 17 of the Statute of Limitations, he is required to show privity between himself and those whose possession he claims, as part of his title under the statute.

4. SAME.—See facts held to be insufficient to support the plea of ten years' limitation.

APPEAL from Hopkins. Tried below before the Hon. Green J. Clark.

H. M. Truehart, August 23, 1872, brought an action of trespass to try title to a tract of 687 acres of land in Hopkins county, against W. S. McMichael.

The defendant pleaded not guilty.

The petition, amended, set out, by metes and bounds, the land claimed, and the chain of title. September 5th, 1876, defendant amended, and pleaded ten years' adverse possession, claiming the land under the 17th section of the Statute of Limitations.

On the trial, September 6, 1876, the plaintiff read in evi-

dence his title; which, as to all its links, was by the parties agreed to be valid, except that it was objected to a recorded copy of a decree of partition of the District Court of Galveston county,

"That the record of that judgment, as shown by the transcript, shows that the proper parties were sued, but that the transcript of the judgment does not show that the parties were before the court, or had been properly cited, so as to give the court jurisdiction over them; and (2) that the certificate of the clerk to the said transcript does not show that all the proceedings had in said cause were included."

W. B. Shores testified, for the defendant, that in 1852 one Thomas Carroll came into the neighborhood of the land, and cleared a little field on a tract of land owned by one Nelson, adjoining the land in controversy. That Carroll was living on the land in question, or had built a little house on it, near a spring, and was living on it in August or September, 1853; had also cow-pen and garden on the land. Witness did not know when Carroll moved on the land. The first he knew of his being there was in August or September, 1853. Carroll did not cultivate any land on it in 1852. Carroll made the first improvement that was made on the land, and occupied it a year or more after witness first saw him on it, and left it in the last days of 1853, or first days of 1854.

Ellis Ragsdale moved on it next, in the fall of 1853, or in the spring of 1854; witness heard that Ragsdale bought it of one Lee. Ragsdale occupied it two or three years.

J. W. Irans went on it when Ragsdale left it. Irans made several crops there and left it, probably in 1871. Mrs. Kirkland went on it next. * * Defendant McMichael succeeded her, and has lived on it ever since.

In August or September, 1853, witness was at Carroll's house when he was on the land.

The testimony of O. S. Davis was as follows: "I was down at Carroll's in 1852, when he was living on the land in question; I think it was in 1852; it has been so long I can't recollect; I

have nothing to fix the date by except some accounts at home. I have not examined the accounts; I think it was in the fall of 1852. He lived in a little log cabin near the springs. Carroll made a crop on the land, I think, in 1853. Ellis Ragsdale went on it next—think Ragsdale went there in the fall of 1853. Ragsdale was there two or three years. J. W. Irans went on it next. Never saw the house vacant. I lived at Sulphur Springs, ten miles from the land. The widow Kirkland went there next; I don't know how long she stayed there. McMichael, the defendant, succeeded her. He is living there now. When I first saw Carroll on the place he had a little garden in cultivation on the place; I think it was in the fall of 1852, probably September. My attention has not been called to this matter before until during this term of court. I have talked with defendant and his witnesses, and have recalled the facts as stated by me. I give them as my best recollection."

T. J. Stribling testified: Witness knows the land and the defendant. Defendant lived on the land since January, 1871. Mrs. Kirkland lived there before. Defendant bought her improvements and possession in January, 1871, and paid her about $100 for them. She bought the improvements of Irans and paid him a wagon valued at $100 for them. Irans never claimed the land; he only claimed the improvements, and that was all he sold to Mrs. Kirkland. Irans was on the place in 1867, when witness first moved to the neighborhood. Since that time the place has been occupied without interruption.

McMichael, the defendant, testified that he had been in possession of the land about four years; lives about two hundred yards from the old Carroll house; bought of Mrs. Kirkland, in fall of 1870, or 1871, her possession, and paid her one hundred dollars in gold; have had possession ever since; moved in before Mrs. Kirkland left; bought her improvements and possession.

Plaintiff, rebutting, called James A. Weaver, whose testi-

mony was as follows : " I had a conversation with defendant McMichael soon after he went on the land.   He told me he had bought only the improvements that Mrs. Kirkland had on the land.   I filed a certificate on the land in 1862, thinking it was vacant.   In 1865 I came back from the army and found Irans on the land, and wanted him to pay me rent. He said he did not claim the land, but had bought only the improvements, and wanted me to pay for them.   I refused to do so, but told him I must have rent.   He said he would not pay rent, but would get off first.   I told him not to get off ; that I wanted him to stay on it and hold for me until I got my patent, and then we would settle about the rents and improvements.   He agreed to this, and remained on the land a year or two afterwards.   I found the land was not vacant, and abandoned my location.   Irans at length sold his improvements to Mrs. Kirkland.   I then went to see her, (before I found that the land was not vacant,) and told her she was on my land, and must pay me rent if she stayed there.   She said she had only bought the improvements and laid no claim to the land, and that she would get off before she would pay any rent.   Before she left I found that I could not get title to the land, and abandoned it."

Judgment was rendered by the court for six hundred and forty acres for the defendant, under his plea of limitations, and for his costs ; and Truehart appealed.

*S. J. Hunter,* for appellant, cited Patterson *v.* Withers, 27 Tex., 491 ; Burdett *v.* Silsbee, 15 Tex., 604 ; Alexander *v.* Maverick, 18 Tex., 179 ; Bullock *v.* Ballew, 9 Tex., 500 ; Ang. on Lim., p. 410, secs. 5, 7, 11, 12 ; Kimbro *v.* Hamilton, 28 Tex., 565 ; Melvin *v.* Proprietors of Locks, &c., 5 Met., (Mass.,) 15 ; Overfield *v.* Christy, 7 Serg. & Rawle, 177 ; King *v.* Smith, 1 Rice, 10 ; Williamson *v.* Simpson, 16 Tex., 444 ; Wheeler *v.* Moody, 9 Tex., 372 ; Christy *v.* Alford, 17 17 How., 601 ; Winn *v.* Wilhite, 5 J. J. Marsh., 524.

*Henderson & Henderson* and *Joseph & Kittrell,* also for ap-
15

pellant, cited 3 Wash. Real Prop., 123, 124, 125, 126, 127;
11 Cushing, 210; 37 N. H., 367; 20 How., 32; 13 Pick.,
250; 26 Ga. R., 191; 34 N. H., 101; 18 Johns., 44; 37
Miss., 152; 28 Ga. R., 130; 2 Smith's L. Cases, (5th Am.
ed.,) 566; Tyler on Ej. and Adverse Enjt., 911, 913, 914;
Simpson *v.* Downing, 26 Wend., 316; 5 J. J. Marsh., 524;
Brandt *v.* Ogden, 1 Johns., 156; Smith *v.* Chapin, 31 Conn.,
530; Guilbeau *v.* Mays, 15 Tex., 416; 17 How., 601; 20
How., 29.

*C. Payne,* for appellee, discussed the authorities cited by
appellant, and insisted that the verdict must be sustained, un-
less it clearly appears to be wrong, citing Powell *v.* Haley, 28
Tex., 53; Ranger *v.* Harwood, 39 Tex., 140; Cochrane *v.*
Faris, 18 Tex., 850; Kinney *v.* Vinson, 32 Tex., 125; Hor-
ton *v.* Crawford, 10 Tex., 382; Charle *v.* Saffold, 13 Tex.,
94; Melton *v.* Turner, 38· Tex., 81.

Moore, Associate Justice.—This is an action of trespass
to try title, brought by appellant H. M. Truehart against
appellee W. S. McMichael, for six hundred and eighty-seven
acres of land in Hopkins county, patented to John S. Thorn,
assignee of Dolores Padillo.

On the trial of the case in the District Court, the defend-
ant admitted that the chain of title, upon which plaintiff re-
lied· to maintain the action, was perfect, except the copy of
the judgment of the District Court of Galveston county, in the
case of Henry M. Truehart *v.* Martin A. Otis and others, re-
lied upon by plaintiff, to show that the title to the land for
which he sues is vested in him in entirety. The objections
urged by defendant to the copy of the judgment and decree
of partition are:

1. That all the proceedings had in said cause are not certi-
fied to by the clerk with said judgment. This was unneces-
sary. It is by and through the judgment and decree that the
interest of the defendant in the land is vested in the plaint-

iff. An exemplification of the judgment roll would be required if the correctness of the judgment was under review, on error or appeal, in an appellate tribunal. For in such case the proceedings which go to make up the record or judgment roll must be looked to in determining whether there is error in the judgment. But when the judgment is adduced as evidence in a collateral proceeding, the rule is altogether different; then the judgment cannot be attacked for errors or irregularities, if the court has jurisdiction of the parties and subject-matter with which it deals. Hence it is the judgment, and not the proceedings had in the case, which must be adduced by the party relying upon the judgment as a muniment of or link in his chain of title. If there is anything in the proceedings in the cause of which the opposite party may avail himself, he should show it; but he cannot require that his adversary shall introduce it in evidence for him. The statute requires the decree of partition, or the judgment by which title to land is recovered, to be recorded before it can be received in evidence in support of a right claimed by virtue thereof, but does not require the record of all the proceedings in the cause. (Paschal's Dig., art. 4710.)

2. It was also objected that the judgment does not show that the proper parties were before the court, or that they had been properly cited so as to give the court jurisdiction over them. This is a mistake. The judgment entry says: "The defendants, though duly cited, came not; but made default." This shows that the court considered the question of service, and determined that the defendants were duly served, and were in default by their failure to appear and answer the plaintiff's petition. If such recitals in domestic judgments are not to be held of absolute verity, when the judgment is relied upon in a collateral proceeding, they are certainly to be taken as *prima facie* true, and are undoubtedly sufficient to support the judgment rendered upon them. (Freem. on Judg., sec. 130, *et seq.*) But if these objections to this judgment were well taken, it would be of no impor-

tance in this case. By the admission of the defendant, the plaintiff had shown a perfect title to an undivided interest in the land for which he sues. He was, therefore, as has been decided by the court, entitled to recover the entire tract from parties in possession without title. (Alexander *v.* Gilliam, 39 Tex., 227.)

The only claim set up by defendant to the land is under the 17th section of the statute of limitations. It is unnecessary for us to determine whether defendant's possession, or the possession of those from whom he claims to have acquired it, was of a character to enable him to claim the protection of this section of the statute for six hundred and forty acres of land, including his improvements, or even for that part of the tract of which there was actual possession, (Word *v.* Drouthett, 44 Tex., 365;) for evidently he utterly failed to prove possession of any part of the land for ten years by himself and others with whom he has shown any privity whatever. Admitting that Carroll, who was the first occupant, took possession ten years before the commencement of the suit, exclusive of the time not to be computed to complete the bar of the statute, (Wood *v.* Welder, 42 Tex., 396,) though this is by no means certain, there is no sort of privity whatever shown to exist between him and the defendant, or between the defendant and any of the occupants prior to Irans, which was unquestionably necessary to entitle him to claim any benefit from their possession.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.