STATE OF NEBRASKA, EX REL. ANNA E. STEWART, V. WILLIAM T. HENTON, TREASURER, ET AL.

FILED MAY 19, 1896. No. 6535.

1. **School-Land Lease:** FORFEITURE: NOTICE. The provision in relation to the forfeiture of school-land leases held by non-residents, found in section 16, chapter 80, article 1, Compiled Statutes, that "the forfeiture may be entered by said board after ninety days from the date of such published notice," *held* to have the same meaning as though it had read after ninety days from the completion of the publications required by the statute.

2. ———: ———: ———. The forfeiture of a school-land lease upon notice published for less time than required by the statute for that purpose *held* ineffective.

ORIGINAL application for *mandamus*.

*W. S. Morlan* and *J. A. Cordeal*, for relator.

*A. S. Churchill*, Attorney General, *George A. Day*, Deputy Attorney General, and *R. T. Hendershot*, contra.

RYAN, C.

This proceeding was allowed to be brought originally into this court for the reason that it is a matter of public importance, involving as it does the duty of a public officer as an agent of the state. The prayer of the petition was that a writ of *mandamus* should issue commanding William T. Henton, the county treasurer of Red Willow county, to receive from the relator the sum of $175 as the full amount of rentals, interest, and costs due upon certain school-land contracts held by the relator, and to issue a receipt accordingly showing all delinquencies and

costs on account of said contracts to have been paid, and that the commissioner of public lands of this state and the said county treasurer be required to allow the relator to redeem said lands and to recognize the validity of said contracts.   Upon the issues joined a referee, by agreement of parties, was appointed, and reported the evidence and the facts thereby established.   To this report no exception has been filed.   We therefore deem it safe to accept these findings of fact as correct.   It is not essential that all the facts found should be considered, and we shall therefore restrict our attention to controlling considerations.   The relator, with her husband, during the ownership of the leases above referred to, has been a resident of Easton, Pennsylvania.   On the 9th of May, 1892, the relator's husband wrote the following letter, which was duly received by the officer to whom it was addressed, to-wit:

"*To the Treasurer of Red Willow County, Nebraska*—DEAR SIR: My wife, Mrs. Anna E. Stewart, is the owner of the Burtless Tract, about six miles from McCook in your county.   To that tract has been added recently by purchase the Wickwire 160 acres.   I have a letter from Frank Albrecht, her farmer, reminding me that the taxes are due.   Will you please send me a statement and Mrs. S. will send you her check on a McCook bank for the amount of her taxes.   There are about $13 back taxes due of the Wickwire tract, and if you will send statement of them and the accrued interest from last August or September she will remit for them.   Your attention will oblige.   Mr. Albrecht in writing me did not speak about receiving my notice about the taxes—did not say how much they were, only reminded me of their being due—perhaps thought I had received notice from you."

The county treasurer, on receipt of the above described letter, on May 14, 1892, made a memorandum on the sheet of paper on which the above letter had been written, of the amount of taxes due upon nineteen different descriptions of land which Mrs. Stewart owned in fee and which

constituted the part of her ranch of which she held full title, but made no note of the lease rental due upon the other portion of her ranch which were held by virtue of contracts of lease with the privilege of purchase, as provided by the laws of this state with reference to school lands. From the foregoing statements it is very clear that there has been no such bad faith as was reprobated in *State v. Scott*, 18 Neb., 597, or in *Richardson v. Pratt*, 20 Neb., 196. Immediately upon being advised of the above amount Mrs. Stewart sent it supposing it covered all she was required to pay, whether in the form of ordinary taxes or in the form of school-land rentals. On the 10th, 17th, and 24th days of June, 1892, the commissioner of public lands and buildings caused to be published in a newspaper in general circulation a notice that the interest and rentals upon the contracts of sale and lease held by Mrs. Stewart were then delinquent, and that if said delinquency was not paid within ninety days said contracts would be declared forfeited by the board of educational lands and funds, and that said forfeiture would be entered of record in the manner provided by law. Of this notice Mrs. Stewart had no knowledge. On September 14, 1892, the board of educational lands and funds adopted the following resolution: "*Resolved*, That all leases and contracts of sale of all school, university, normal, and agricultural college lands, that were delinquent in the following named counties on January 1, 1892, which remain due and unpaid, are hereby declared canceled; *Provided, however*, That this order shall not be held to include any such lease or sale contract, where showing has been made that the owner of any such lease or sale contracts is making a *bona fide* effort to improve the premises described in his lease or sale contracts and to make the payments agreed upon within a reasonable time." Following the above language in the foregoing notice was a description of the lands involved in this controversy.

It is provided in section 16, chapter 80, article 1, Com-

piled Statutes, that if any lessee or purchaser shall be in
default for one year the commissioner of public lands
and buildings may cause notice to be given that if such
delinquency is not paid within a certain time prescribed
with reference to distinct classes of delinquents, the lease
or sale will be declared forfeited by the board of educa-
tional lands and funds.   This section contains also the
language: "In case the owner of such contract of sale or
lease be a non-resident of this state, or his address be un-
known, the notice herein contemplated shall be published
three weeks in some newspaper published or of general
circulation in the county where the land is situated."
The third publication of the preliminary notice was on
June 24, the resolution of forfeiture was adopted on Sep-
tember 14 following.   Instead of allowing ninety days
for redemption from completed service, this resolution
declared a forfeiture in eighty-two days.   But this is not
the worst feature of this notice, for by its own terms it
was provided that "If said delinquency is not paid within
ninety days from the date of this notice said contract
will be declared forfeited by the board of educational
lands and funds and said forfeiture will be entered of
record in the manner provided by law."   The provision
in section 16, chapter 80, article 1, that "the forfeiture
may be entered by said board [of educational lands and
funds] after ninety days from the date of such published
notice," was by that board construed as conferring power
upon the commissioner to date the notice arbitrarily as
of any date he saw fit, no matter though such date pre-
ceded the first publication.   In this instance the date
placed upon the notice was June 1, 1892, and the first
publication thereof was on June 10, immediately follow-
ing.   If this course can be tolerated to the extent of ten
days, we can see no good reason why antedating ninety
days might not as well be resorted to, and in the latter
event publication would be a mere idle ceremony, and
the right to notice guarantied to a non-resident by the
statute and recognized by this court in *State v. Clark*, 39

Neb., 899, would be practically denied. A construction which leads to such an absurdity, and to the sacrifice of property rights without an opportunity for a hearing, should not be adopted unless there is no escape from it. It seems to us that the mere word "date" should not have received so restricted a meaning as was given it by the state authorities, for no requirement exists by statute that the notice be authorized by the action of any board, or that even a record shall be made by the commissioner of public lands and buildings, of the issuance of a notice. The word "date" should therefore be construed with reference to the qualifying words which follow it. The language of the statute is, "ninety days from the date of such published notice." In Webster's International Dictionary, the word "date" is defined: "1. That addition to a writing, inscription, coin, etc., which specifies the time (as day, month, and year) when the writing or inscription was given, or executed, or made," etc. "2. The point of time at which a transaction or event takes place, or is appointed to take place." If the latter of these two definitions is adopted, the word "date" may be qualified by the succeeding words, "of such published notice," and the result will be that the provision in effect is that the forfeiture may be entered by said board after ninety days from the point of time when there is published notice. Thus construed, the statute is quite like that in relation to service of notice for the commencement of actions, and the case of *Scarborough v. Myrick*, 47 Neb., 794, is quite instructive. The time required by this section for the publication of notice is three weeks as against non-residents, so that the board had no power to declare a forfeiture until ninety days from the last day of the publication; that is, from June 24, 1892. There was, therefore, no binding forfeiture, and the relator is still entitled to redeem and to the relief prayed. A writ accordingly will therefore issue.

WRIT ALLOWED.