HOUSTON, EAST & WEST TEXAS RAILWAY COMPANY v. THEODORE KELLER.

Decided November 30, 1896.

Contract—Construction—"After Foreclosure Sale" Defined.

The holder of a claim against a railway which had been ordered sold by a receiver for the satisfaction of that, among other claims, agreed (before such sale and pending an appeal, which was dismissed in pursuance of such agreement) to accept bonds of a reorganized company in settlement of his claim, on condition that such bonds should be delivered to him "within three months after the foreclosure sale under said final decree, or as soon thereafter as practicable, not to exceed the period of six months from the date of said forclosure sale." The sale was made August 7, 1892, and confirmed October 25, 1892, and (the time for compliance having been extended by the court, because the purchaser was unable sooner to comply), was consummated April 26, 1893, by compliance, and delivery of the property, and the bonds were delivered to a trustee for claimant June 13, 1892. In a suit by claimant to recover his debt from the reorganized company, reviewing the definition and meanings, legal and popular, of the word "sale," and the circumstances of the parties,—it was Held:

1. That the purpose of the stipulation was to afford a reasonable opportunity, after the completion of the sale and the acquisition of the title by the purchasers, to organize a new company, and to issue the bonds. (P. 221.)

2. By "the foreclosure sale," as employed in the contract, the parties meant the completed sale, including the auction, the confirmation, and the compliance with the bid. (Pp. 220 to 222.)

3. The bonds having been delivered to his trustee, and claimant notified within the time limited from the date of the completed sale, the debt sued on was discharged thereby, and it was unnecessary to decide whether the reorganized company took the property free from incumbrances. (P. 222.)

ERROR to Court of Civil Appeals for First District, in an appeal from Harris County.

Keller sued the railway company to recover the amount of certain claims allowed in favor of interveners in a suit against the old company, in which its property had been placed in the hands of a receiver, sold, and a reorganization effected, the suit being against the reorganized company. Plaintiff recovered judgment for the full amount of his claims. Defendant appealed, and, the judgment being affirmed, obtained a writ of error.

*Baker, Botts, Baker & Lovett,* for plaintiff in error.—The Court of Civil Appeals erred in overruling and holding not well taken appellant's first, second, third and fourth assignments of error, grouped and presented together in appellant's brief, and presenting substantially the proposition that appellee's claim having accrued only against the Houston, East and West Texas Railway Company as it originally existed, and the property, rights and franchises of said company having been sold to satisfy the same and other liens under judicial decrees, such property having been acquired by petitioner from the purchasers at such sale, was not liable, and petitioner was not liable for the claims declared on by appellee. Rev. Stats., 1895, art. 4549; Railway v. Newell, 73 Texas, 334; Acres v. Moyne, 59 Texas, 62; Railway v. Shirley, 54 Texas, 125; 1 Thompson, Corporations, sec. 263.

The Court of Civil Appeals erred in overruling, and holding not well taken, petitioner's sixth assignment of error complaining of the action of the court below in rendering judgment against petitioner, when the undisputed evidence showed conclusively that long before petitioner acquired the property now owned by it, and before the institution of this suit, appellee had sold, assigned and transferred the claims sued on to T. W. House, in trust for E. S. Jemison, on conditions which had been fully complied with by the said Jemison, and that appellee had parted with all his right and interest, and no longer owned any right or interest whatsoever in or to said claims. The sale of the property under foreclosure, and on terms prescribed in the decree of foreclosure, and on stipulated conditions to be complied with by the purchaser, and subject to confirmation by the court after compliance with all the terms of sale by the purchaser, is not completed until the sale is confirmed, and all the conditions upon which the sale is to be made are complied with by the purchaser. Rorer on Judicial Sales, secs. 122, 124, 134; Daniel's Chancery, (4 ed.), 1274, 1281; Williamson v. Berry, 8 How., 495, 546; Busey v. Hardin, 2 B. Mon. (Ky.), 407, 411; Forman v. Hunt, 3 Dana (Ky.), 622; Campbell v. Johnston, 4 Dana (Ky.), 186. The agreement of May 26, 1890, contemplated that the obligation to issue the bonds did not mature until the legal title to the property became vested in the purchaser, and the possession thereof should be delivered by the receivers, since not until then did the purchaser succeed to the franchises of the corporation, and have such title to the property as would authorize the issuance of bonds and the execution of a mortgage creating a first lien upon the property.

"The court erred in rendering judgment against this defendant when the undisputed evidence showed that the railroad and all the property, rights and franchises now owned by this defendant were purchased by E. S. Jemison at the judicial sale thereof, made under the judgments and decrees of foreclosure by the District Court in and for Harris County, Texas, in the cause wherein the judgments sued on by plaintiff were also rendered on intervening petitions in said cause, for himself and on his own account, with the distinct understanding and agreement with those now owning the stock and bonds of this defendant, that he, the said Jemison, should transfer the same to this defendant free from all claims of every character against the said sold-out railway company, against which plaintiff's claim accrued and exists, and shows further that this defendant never in any manner assumed any of the obligations of the said Jemison, as such purchaser, with plaintiff or other persons, and in no way became bound or liable to pay plaintiff's demand." Railway v. Granger, 86 Texas, 350; 1 Thompson, Corporations, secs. 263, 480, 488-490.

*W. P. Hamblen*, for defendant in error.—The date of the foreclosure sale, as fixed by the contract, ˚contemplates the date when the property was sold by the master commissioner on the 2nd day of August, 1892, and, at least, the 25th day of October, 1892, the date of its confirmation. Flemming v. Powell, 2 Texas, 225; Miller v. Alexander, 8 Texas, 36; Leland v. Wilson, 34 Texas, 79; Donnebaum v. Tinsley, 54 Texas, 362.

The Houston, East and West Texas Railway Company having adopted the acts of E. S. Jemison, a promoter, and having accepted the property, did not alter the status of the judgment creditors and lien-holders, and by the ratification of the acts of E. S. Jemison they are liable to pay the debts, and must abide by the contract made by E. S. Jemison, and when the company ratified a part of the contract it must necessarily have ratified the whole. Bonham C. C. Co. v. McKeller, 86 Texas, 694; McArthur v. Times Printing Co., 48 Minn., 319; Battelle v. Paving Co., 37 Minn., 89; 21 Nebraska, 621; 10 N. Y., 550; 81 N. Y., 468; 79 Pa. St., 54; 40 Md., 395; Negley v. Lindsey, 67 Pa. St., 217; Whitney v. Wyman, 101 U. S., 392; 8 Wheat., 363; 81 N. Y., 468. Upon question of Jemison's liability: Carmody v. Powers, 60 Mich., 26; Doubleday v. Muskett, 7 Bing., 110; Western Screen Mfg. Co. v. Conoly, 77 Ill., 531; Ins. Co. v. Hart, 31 Md., 59; McDonough v. Bank, 34 Texas, 309; Stanley v. Burkhead, 9 Sim., 264; Gooday v. Railway, 15 Eng. Law & Eq. Rep., 596; Redfield on Railways, 18.

GAINES, Chief Justice.—This suit was brought by the defendant in error against the plaintiff in error and one E. S. Jemison, one H. W. Downey, and James Appleby, and was twice tried in the District Court, and upon both trials resulted in a judgment in favor of the plaintiff. Upon appeal from the judgment first rendered, the Court of Civil Appeals reversed the judgment and remanded the cause. Upon the second

trial demurrers to the petition by Jemison, Downey, and Appleby were sustained, and they were dismissed from the case. Judgment was however rendered for the plaintiff against the defendant corporation for the full amount of his claim. This judgment was affirmed in the Court of Civil Appeals.

In the opinion of the latter court upon the second trial, the facts of the case are stated as follows:

"That in 1885 the railroad and all of the property, rights, and franchises of every character of the Houston, East and West Texas Railway Company was put in the hands of a receiver by the District Court of Harris County; and that by the decree of that court such property was ordered sold to pay judgments which had been established against the company, including those sued on by the plaintiff, secured by liens having precedence over the mortgage securing the bonds of the company, and also to pay such bonds. This decree required that the railway and all of the property and franchises of the company should be sold for not less than $1,200,000; and that of this sum $375,000 should be paid in cash to satisfy the preference liens securing judgments of the class to which those sued on by plaintiff belonged; but that receipted claims of that class produced by the purchaser should be accepted by the commissioner as so much cash; and that the remainder of the purchase money might be paid in first mortgage bonds of the company. The decree also provided that the title to the property should pass to the purchaser freed from all claims except to current obligations and liabilities of the receiver. The decree of foreclosure was first rendered by the District Court, and an appeal was taken by the trustee for the bondholders to the Supreme Court, contesting the priority given to such claims as plaintiff's, and the decree was by that court reformed without affecting such priority. From this judgment a writ of error to the Supreme Court of the United States was sued out by the trustee for the bondholders and while it was pending the following instrument was executed by a number of the holders of claims against the railway company, including plaintiff:

" 'The undersigned, creditors of the Houston, East and West Texas Railway Company, hereby agree, one with the other, and with E. S. Jemison, of the City and State of New York, to accept for their several claims, principal and interest, the first mortgage bonds of said Houston, East and West Texas Railway Company, to be hereafter issued by the company organized by the purchasers of said railway at foreclosure sale, at the rate of not exceeding twenty thousand dollars ($20,000) per mile, at their face value, that is to say, one bond for each one thousand dollars of said claims, and for fractional portions of said claims certificates entitling holders thereof to said first mortgage bonds, when presented in amounts aggregating one thousand dollars, said certificates bearing interest at the rate of five per cent per annum from date of issue, said bonds to be payable forty years after date and to bear interest at the rate of five per cent

per annum from date, interest payable semi-annually, and to be for one thousand dollars each.

" 'To this end we hereby assign our respective claims to T. W. House,. to be held by him in trust, to be delivered to the said E. S. Jemison, or his assigns, in exchange for said bonds to be issued as aforesaid. The claims held by us are judgments against said Houston, East and West Tex-as Railway Company, rendered by the District Court of Harris County, for the respective amounts and at the respective dates set opposite our names,. —said judgments having been given priority of payment in the final de-cree rendered by the District Court of Harris County in the case of Jacob Binz, et al. versus the said railway company, et al., on the 19th day of November, 1889, as modified by the decree of the Supreme Court of Texas, made on the 29th day of March, 1890. This agreement is made upon the condition that said bonds are to be delivered to us, in exchange as aforesaid, within three months after the foreclosure sale under said final decree, or as soon thereafter as practicable, not to exceed the period of six months from the date of said foreclosure sale. If this agreement shall not have been assented to by the holders of claims in an amount sat-isfactory to said Jemison, prior to the date of said foreclosure sale, then the same to be null and void. This agreement is one of several, sim-ilar in all respects, and each paper shall have the same force and effect. as if all were one instrument. .

" 'Witness our hands this 26th day of May, 1890.'

"The cause was afterwards dismissed from the Supreme Court of the United States and the final decree was entered by the District Court, as before stated, in accordance with the judgment of the Supreme Court. The sale was made under the final decree of foreclosure on the 7th day of August, 1892; the property was purchased by E. S. Jemison and the sale was reported to the court and confirmed by its order on the 25th day of October, 1892. The terms of sale were not at once complied with; but on the 19th day of November, 1892, the court, upon motion of the pur-chaser, granted a 'short additional time for the purchaser to comply,' and on the 20th day of February, 1893, the court made another order ex-tending the time until the next term of the court,—reciting 'that the de-lay in complying with the terms of his purchase by said E. S. Jemison has been brought about wholly unexpectedly to him, and without ap-parent fault on his part, and that he has partially complied with the terms of his contract.' At the next term thereafter, and on the 26th day of April, 1893, the commissioner reported to the court that Jemison had complied with the terms of sale, stating further that in so doing he had passed before him (the commissioner), as part of the money to be paid in cash, the judgments here sued on by plaintiffs which had been allowed in part payment.

"The court thereupon entered a decree reciting that Jemison had com-plied with the terms of sale, and that it was made to appear that he had assigned to the Union Trust Co., of New York, his bid and all of his,

rights under it for the purchase of the railway and its appurtenances, and ordering the commissioner to make to such company a deed conveying the property 'free from all charges and incumbrances except current obligations of the receiver,' and further ordering the receiver to deliver the property to the purchasing company upon its demand. The order further provided for the closing up of the receivership upon the delivery of the property to the Trust Co.

"On the 26th day of May, 1893, the commissioner executed to The Union Trust Co. a deed conveying the property to it, which recited the proceedings prior and subsequent to the sale as well as the sale and purchase by Jemison, and his assignment of his bid to the Trust Company and recited that such conveyance was made in consideration of the premises and of one million two hundred thousand dollars paid to the grautor by Jemison and the Trust Company, as shown by his reports to the court.

"On the 8th day of May, 1893, The Union Trust Co. made a deed conveying the same property to the defendant in this suit, the re-organized Houston, East and West Texas Railway Company, reciting the judicial sale of the property, the bid by Jemison and his assignment of same to the Union Trust Company, and that Jemison and his associates were in fact the purchasers for whose use and benefit the Trust Company acquired and held the legal title, and were entitled under the laws of Texas to have and exercise the rights, powers and privileges granted to the corporation under its charter. This conveyance further recited that it was made in pursuance and accomplishment of the objects, purposes, trusts and conditions specified and set forth in the conveyance from Jemison to the Trust Company and in consideration of five million seven hundred and sixty thousand dollars, to be paid by the railway company as follows, viz.: one million nine hundred and twenty thousand dollars of the capital stock of the railway company issued in the name of Jemison or his appointees and transferred by them to the Trust Company; and three million eight hundred and forty thousand dollars in first mortgage bonds, secured by mortgage to the Trust Company in trust for the holders of such bonds.

"On the 15th day of May, 1893, the defendant company executed to the Union Trust Company, as trustee, a mortgage on its properties to secure its first mortgage bonds issued by it, in accordance with its plan of organization adopted by the purchaser, to pay the purchaser of the road at the rate of twenty thousand dollars per mile of completed road. On June 13, 1893, bonds of the defendant company of the character and in amount provided for in the contract signed by plaintiff were placed in the hands of T. W. House for plaintiff, and he was notified of the fact, and then declined and has ever since declined to receive them, on the ground that they were not tendered within the time required by the agreement."

A part of the court's statement in reference to the relation of Jemison

to the defendant company is omitted, because it is in our opinion not necessary to a decision of the case.

The counsel for the plaintiff in error, the defendant in the trial court, claim:

1. That Jemison complied with his contract by the delivery, or at least by the tender of the bonds within the time stipulated and that therefore the debt sued upon was discharged.

2. That, even if Jemison failed to comply, the railroad company took the property free from any incumbrance by reason of the claim.

Upon the first point there is no controversy as to the facts. From the statement of the Court of Civil Appeals it appears that the property was offered for sale and was bid off by Jemison on the 7th day of August, 1892; that on the 25th day of October, 1892, the proposed sale at the bid made was confirmed by the court which ordered it, and that on the 26th day of April, 1893, the commissioner having reported that the bid had been complied with, the court made its final consummation of the transaction by ordering him to make a deed and the receiver to deliver the property to the Union Trust Co. of New York, assignee of Jemison's rights under his bid. It also appears, that the delay in completing the sale was attributable to Jemison's inability to make good his bid without the indulgence of the court; and that this indulgence was granted. The bonds were delivered to House for the plaintiff Keller on the 13th day of June, 1893. It is thus shown that the bonds were not delivered nor tendered until more than six months from the day on which the property was bid off and more than six months from the confirmation—but within six months from the time the sale was completed by a transfer of the property. Therefore the solution of the question, whether or not Jemison complied with his contract within the stipulated time, resolves itself into the inquiry, what was meant by the word "sale" as used in the written agreement. In its strictest legal sense, "sale" is the transfer of the absolute or general property in a thing for a price in money." Wittkowsky v. Wasson, 71 N. C., 455, quoting Benjamin on Sales. This is the definition of an executed sale, but some authorities recognize an executory contract of sale as coming within the meaning of the term in question. The agreement between Jemison and Keller is made with reference to a legal proceeding; and it seems to us, that in the first instance the parties in using a legal term ought to be presumed to have used it in a legal sense. Yet the intention must govern, and we think that the presumption should yield, provided the whole instrument evinces that the parties used the word in a less accurate technical sense or even in its popular acceptation. A foreclosure sale of the character of that in question requires three things for its consummation: (1) An auction and a highest bid; (2) a confirmation by the court; and (3) a compliance with the terms of the offer and bid. Clearly the contract is inchoate until the confirmation, and it seems to us that the matter remains in fieri until the bidder has performed his part of the contract. Until a compliance or an offer to

comply he has no legal or equitable right in the subject matter of the proposed sale. But when property is knocked down to a bidder at public outcry, the transaction is commonly called a sale. Even in statutes and in legal treatises, it is frequently so denominated. "The confirmation of the sale" is a usual phrase, although until confirmation there can be no sale.

But the question recurs, did the parties use the word in its less accurate or popular sense? In determining the question, the subject matter of the agreement and the purposes contemplated by the parties in making it should be considered. Such consideration does not aid the construction claimed here by defendant in error. A writ of error had been sued out in the Supreme Court of the United States to the judgment which established Keller's liens; Jemison was seeking to adjust the matter and to stop further litigation, by having those creditors who had been decreed to have priority of payment over the mortgage bonds which he held to consent to receive in payment of their debts the debentures of a new company instead of money. Defendant in error in speaking of the bonds testified: "As to my thinking they were worth something when I made the contract, I made the contract four or five years ago, that was when my claims were in litigation, and I thought he had money enough to pay off these claims as he agreed." The bonds which were to be delivered in payment of his claims were in the language of the contract: "The first mortgage bonds of said Houston, East and West Texas Railway Company, to be hereafter issued by the company organized by the purchasers of said railway at foreclosure sale, at the rate not exceeding twenty thousand dollars ($20,000) per mile, at their face value." The bonds could not be isssued until the property had been conveyed by a completed sale to the purchasers and until a company had been organized, had accepted the property so acquired, and had prepared them for delivery. These precedent conditions must have been contemplated in making the agreement. It was evidently considered that time would be necessary in order to enable Jemison to accomplish these results and so to comply with his contract. The time for the delivery of the bonds might have been fixed arbitrarily from the date of the agreement, but this was not done. It is therefore to be inferred that the purpose of the stipulation was to afford a reasonable opportunity, after the completion of the sale and the acquisition of the title by the purchasers, to organize a new company and to issue the bonds.

But we may say further—admitting that the offer of property at auction under a judicial decree requiring a confirmation, and its being knocked off to the highest bidder is ordinarily called a sale,—the same cannot be said of the confirmation. So that it seems to us that by the words, "the foreclosure sale," as employed in the contract, the parties either meant the auction, or they meant the completed sale. If they had meant "the confirmation of the sale," they would have employed merely those terms. Since the rights acquired by bidding off the prop-

erty at the auction are inchoate, since the bid may be set aside, or the confirmation indefinitely delayed by a contest or from other causes, and since therefore the time in which the confirmation could be secured and the title transferred could not admit even of an approximate computation in advance, we are of opinion that a limitation of the period for the delivery of the bonds running from the date of the auction would not have accomplished the purpose of the parties in inserting the stipulation. It would have fixed a limitation, practically arbitrary; and if it had been the intention to do this, we do not see why they should not have made the time to run a certain number of months or years, from the date of the agreement itself.

The construction, that by the words "foreclosure sale" was meant a sale in its strictest legal acceptation—that is, an executed sale—is consistent with all the terms of the agreement, and meets the purposes which we think it is reasonably to be inferred the parties had in view in inserting the stipulation; and therefore we think that it was intended that Jemison should have six months from the final consummation of the sale of the railroad, in which to deliver the bonds. A construction that would forfeit a right is not favored in law.

The bonds were delivered to House and the defendant in error was notified of the fact within less than six months from the time the sale was completed and we think it a matter of no moment that there was delay on part of Jemison in complying with his bid. It is to be presumed, that the court granted him indulgence upon sufficient grounds.

Jemison having in our opinion complied with his contract, the debts of defendant in error, sued upon in this case, were discharged and he cannot recover. As before intimated, it is unnecessary to consider the second ground of error urged in this court.

The judgments of the District Court and of the Court of Civil Appeals are therefore reversed; and there being no dispute about the facts, which control the disposition of the case, judgment is here rendered for the plaintiff in error.

*Reversed and rendered.*