## WALKER *et al.* v. McKEMIE.

No. 3525.   Opinion Filed December 22, 1914.

(145 Pac. 359.)

1.   **INDIANS—Allotments—Leases—Approval.**   Act Cong. March 3, 1905, c. 1479, 33 St. at L. 1060, making appropriations for the expenses of the Indian Department, and for fulfilling treaty stipulations with the Indian Tribes, required the approval of all guardian's leases to allotted lands of minor members of the Five Civilized Tribes; such approval to be by the United States court having jurisdiction of the guardianship proceedings, and without which no guardian's lease should be valid or enforceable.

2.   **SAME — Allotted   Lands — Lease — Recording — "Date."**   That part of Act Cong. June 28, 1898, c. 517, sec. 29, 30 Stat. 507, providing that " * * * every lease * * * which is not recorded in the clerk's office of the United States Court for the district in which the land is located, within three months after date of its execution, shall be void * * * " in the case of a lease to allotted lands made by guardian, should be construed to mean three months from the date of approval by the court having jurisdiction of the proceedings.

3.   **SAME—Leases—"Execution."**   The approval of a guardian's lease being necessary to its validity or enforceability, such lease was not fully executed within the meaning of the act of June 28, 1898, until its approval by the court as provided by the act of March 3, 1905.

1.   **SAME—Appointment   of   Guardian—Evidence—Admissibility.**   The recitals contained in an order approving a guardian's lease to allotted lands, made by the United States Court in the Indian Territory, together with the recitals in the lease, and the court's approval indorsed thereon, and which recitals appear to have been regularly made in a pending proceeding, and recite the fact of the guardianship, and direct the enter-

ing into of a lease, are, in the absence of the entire record, admissible as **prima facie** evidence that the lessor was the duly appointed guardian.

(Syllabus by Sharp, C.)

*Error from County Court, Marshall County;*

*J. W. Falkner, Judge.*

Two landlord attachment actions brought by Will McKemie in justice court; one against Joe Walker, the other against D. A. Woods. From judgment for defendants, plaintiff appealed to the county court, wherein S. G. Wood was made a party defendant and the actions consolidated. Judgment for plaintiff in the county court, and defendants bring error. Reversed and remanded.

*James E. Humphrey* and *Richard M. Lester,* for plaintiffs in error.

*H. A. Ledbetter,* for defendant in error.

Opinion by SHARP, C. The real parties in interest in this controversy are the defendant in error McKemie and plaintiff in error Wood. Both McKemie and Wood claimed the right to the lease on the allotment of John Hepson, a minor, through different leases, made by different guardians of said minor. The leases to McKemie were made by Joseph Fulsom, who was appointed guardian of said John Hepson, December 24, 1907, by the county court of Haskell county, and bear date during the month of October, 1909. The lease on the surplus allotment was for five years, that on the homestead for one year, each beginning January 1, 1910. These leases were each approved by the county judge of Haskell county on November 29, 1909. The lands included therein were cultivated during the year 1910 by Woods and Walker as tenants of Wood. Wood claimed title through a lease made by I. C. Cole, who also claimed to be the guardian of John Hepson, to one John R. Edwards, and which lease was by Edwards assigned to Wood, on August 18, 1908.

This lease was entered into in the month of August, 1905, for a period of five years beginning January 1, 1906.

As a part of their case, the defendants offered in evidence the lease made by the guardian, Cole, to Edwards, and the order of the United States Court for the Central District of the Indian Territory, approving the same. The court's action in excluding as evidence the documents and records mentioned is the principal error urged in this court. The questions involved are: (1) Whether a lease made by the guardian of a minor Choctaw allottee, otherwise valid, is rendered void because of a failure to record the same in the clerk's office of the United States court for the district in which the land was located, within three months after the date the lease was signed and acknowledged, where such lease was recorded within three months from the date of approval by the court. (2) Are the recitals in a lease executed by one claiming to be a guardian, and which lease purports to have been approved by the judge of the court having jurisdiction of the guardianship proceedings, both by indorsement on the lease itself and by journal entry of order of approval made in open court, competent evidence that the lessor was in fact such guardian?

Turning to the first question presented, we find that section 29 of the act of Congress of June 28, 1898 (30 St. at L. 495), provides:

"No allottee shall lease his allotment, or any portion thereof, for a longer period than five years, and then without the privilege of renewal. Every lease which is not evidenced by writing, setting out specifically the terms thereof, or which is not recorded in the clerk's office of the United States court for the district in which the land is located, within three months after the date of its execution, shall be void, and the purchaser or lessee shall acquire no rights whatever by an entry or holding thereunder. * * *"

It is, therefore, necessary to determine what is meant by that part of the foregoing act providing that the lease shall be recorded "within three months after the date of its execution." By defendant in error it is insisted that the date of execution refers

of the date of signing, or, at furthest, the date of acknowledgment of the lease. On the part of plaintiffs in error it is urged that the date of execution includes the date of approval by the court having jurisdiction of the proceedings. By the act of March 3, 1905 (33 Stat. at L. 1060), making appropriations for the expenses of the Indian Department, and for fulfilling treaty stipulations with the Indian Tribes, the Secretary of the Interior and the Attorney General were empowered to investigate leases of allotted lands in the Indian Territory, and to bring suits to cancel them for fraud. The act, however, expressly provided that:

"No lease made by any administrator, executor, guardian or curator, which has been investigated by and has received the approval of the United States court having jurisdiction of the proceedings shall be subject to suit or proceedings by the Secretary of the Interior or Attorney General."

And that:

"No lease made by any administrator, executor, guardian, or curator shall be valid or enforceable without the approval of the court having jurisdiction of the proceeding."

It will be remembered that the United States courts in the Indian Territory had the powers of probate. Act May 2, 1890, c. 182, par. 31, 26 St. at L. 94; Act April 28, 1904, c. 1824, par. 2, 33 St. at L. 573. It is unnecessary to discuss here the procedure in force in the United States courts in the Indian Territory, in the matter of the appointment of guardians or curators, except to note that the appointment of all guardians or curators was made either by the court, or, if by the clerk, subject to confirmation by the court. According to the plain letter of the statute, no lease of allotted lands, made by a guardian, had any force without the approval of the United States court having jurisdiction of the guardianship proceedings. *Morrison v. Burnette,* 154 Fed. 617, 83 C. C. A. 391; *Indian Land & Trust Co. v. Shoenfelt,* 5 Ind. Ter. 41, 79 S. W. 134.

It being necessary, in order that the lease should be valid or enforceable, that it be approved by the court, the lease would

not be executed, within the meaning of the act, until it received the court's approval. The approval was a necessary step in the execution of the lease. Until that was done the rights of the lessee were inchoate, since the court may not have approved the lease as originally prepared, or may have ordered changes made or imposed new conditions or additional consideration, which would have been assented to by the parties. In other words, the approval of the lease being indispensable to its validity, without such approval there was no valid or enforceable lease. The statutes must be read together and each given effect. Our position finds abundant support in the authorities. In *Smith v. Mayor, etc., of New York* (Super. N. Y.) 4 N. Y. Supp. 449, construing the Laws of 1880, c. 550, sec. 6, providing that, upon the filing of the certificate in a street assessment proceeding the amount fixed thereby, "with interest thereon from the date thereof, and no more," should be the extent of the lien, it was said by the court:

"In my opinion, the words in the last section, 'date thereof,' should be construed as meaning from the date of the filing of the certificate; for it is the filing of the certificate which gives to the decision of the commissioners its validity, authority and force."

There the certificate was dated March 25, 1884, but was not filed until March 3, 1886. A well-considered case is that of *Houston, E. & W. T. R. Co. v. Keller*, 90 Tex. 214, 220, 37 S. W. 1062, 1065, where the "date of the foreclosure sale" in an agreement between a judgment creditor and an insolvent railway for reorganization, in which the creditors assigned their judgment to the reorganizers in consideration of first mortgage bonds of the new company, it being provided that bonds should be delivered within six months after the date of the foreclosure sale, meant the date when the sale was completed, and not merely the date when the property was bid off, or the date of the confirmation. In *State ex rel. Stewart v. Henton*, 48 Neb. 448, 67 N. W. 443, the provision in relation to the forefeiture of school leases held by nonresidents of the state, found in section 16, c. 80, art. 1, Comp. Stat., that "the forfeiture may be entered

by said board after 90 days from the date of such published notice," was held to have the same meaning as though it had read, "after 90 days from the completion of the publications required by the statute." In *Orcutt v. Moore,* 134 Mass. 48, 45 Am. Rep. 278, it was held that the word "date," in the statutes of 1874, c. 111, relating to the recording of mortgages of personal property, was not limited to the date stated in the *in testimonium* clause, but referred to the day of the delivery of the deed. Other cases bearing upon the question are: *De Florez v. Raynolds* (C. C.) 8 Fed. 434; *United States v. Moore,* 95 U. S. 760, 24 L. Ed. 588; *Bement et al. v. Trenton, L. & M. Mfg. Co.,* 32 N. J. Law (3 Vroom) 513.

The presumption that the lease was delivered on the day of its acknowledgment is overcome by the recitals in the order of approval, showing that the guardian at the time presented to the court the lease contract, and by the fact of the judge's indorsement of his approval upon the lease. To sustain the position of the defendant in error, the lease was void when approved, because the court's approval was made more than three months after the date on which the lease was signed as well as the date of the acknowledgment. The result, then, would be that if a lease was signed and acknowledged by the parties, and no opportunity was afforded for its presentation to the court for three months thereafter, a valid lease could not be made, and this without regard to the fact that court might not be in session at the court town where the guardianship proceedings were pending, during the three months' period. The position bears its own refutation.

The original lease, it appears, was filed for record at Tishomingo, February 22, 1906, in the office of the deputy United States clerk and *ex officio* register of deeds for district No. 22 of the Indian Territory, and recorded in Book 10 at page 255. Being recorded within three months from the date of its approval, or final execution, it was error in the trial court, for the rea-

son assigned, to sustain the objection to its introduction as evidence on the part of the defendants.

Referring to the second error mentioned, was there sufficient proof that I. C. Cole was ever the guardian of the minor John Hepson? The only evidence of his appointment is found in the recitals contained in the order approving the lease, and in the lease itself and the fact of the approval thereof. Had there been no guardianship proceedings pending, the court would have been without jurisdiction in the premises. The recitals in its orders were at least *prima facie* evidence that the lessor was the duly appointed and acting guardian, though it would have been proper to have introduced a duly authenticated copy of the original letters of guardianship, or the order of appointment. The failure, however, to do so did not render the record evidence offered incompetent, for it is a rule recognized by high authority that the absence of an entire record may be supplied by recitals in the judgment or decree of all the essential facts, jurisdictional or otherwise; that where the judgment or decree on which the party adducing it in a collateral action relies as a muniment of title or as a link in a chain of title recites all the essential facts, jurisdictional or otherwise, in regard to the proceedings in which it was rendered, the record of such judgment or decree, or a duly authenticated copy thereof, is admissible as *prima facie* evidence at least, without producing a complete record or transcript of the proceedings. *Wilson et ux. v. Spring,* 38 Ark. 191; *Monk v. Horne,* 38 Miss. 100, 75 Am. Dec. 95; *Verhine v. Ragsdale,* 96 Tenn. 532, 35 S. W. 556; *Truehart v. McMichael,* 46 Tex. 222; *Beck et al. v. Henderson,* 76 Ga. 360; *Blackburn v. Jackson et al.,* 26 Mo. 308; *Simmons v. Threshour,* 118 Cal. 100, 50 Pac. 312. It was, therefore, error for the court to refuse to admit in evidence the guardian's lease of August, 1905, approved in February, 1906, and the order of approval. The latter lease covered the same land included in the lease made by Fulsom, as guardian, to defendant in error McKemie. Both leases included the year 1910. The importance, therefore, of the original lease

as a muniment of title to plaintiff in error Wood is readily apparent. Whether said lease was in force when the cause of action arose, we are not advised. From the order of approval it appears that the former lease only included the surplus allotment. What part of the attached property was grown on the surplus, and what portion on the homestead, we are unable to here determine. These and other questions suggest themselves, and can only be determined upon a further hearing. The only question necessary for our consideration is the action of the court in excluding as evidence the writings and record herein referred to. As we have seen, in this the court erred.

The judgment should, therefore, be reversed, and the cause remanded.

By the Court: It is so ordered.