**OVERTON REFINING CO. et al. v. HARMON et al.**

No. 4358.

Court of Civil Appeals of Texas. Amarillo.
March 11, 1935.

Rehearing Denied April 1, 1935.

. Geo. E. Holland, of Beaumont, and John C. Gray, of Henderson, for appellants.

Phillips, Trammell, Chizum, Estes & Edwards, of Tyler, and Smith & West, of Henderson, for appellees.

MARTIN, Justice.

In 1918 H. C. Maxwell and his first wife, Arie Maxwell, owned as community property three tracts of land, a 102-acre tract, a 108-acre tract, and 9.29 acres known as the Pruitt tract. On November 5, 1918, they conveyed these to J. M. Cohagen by metes and bounds. About February 1, 1919, Cohagen purchased from Bolt about one acre of land adjoining the Pruitt tract on the south. Only the Pruitt and Bolt tracts immediately concern this lawsuit. In running out the lines of the 9.29-acre tract, the land in controversy was omitted; its omission being explained by Cohagen as follows: "We followed the road and fence until we reached a place which was the west line of the E. S. Thrash land or supposed to be in the road and instead of following the road and fence from this point further, Mr. Maxwell stated that his land continued with the road and fence, but if I preferred, we would run south to the Bolt lot and leave the road and fence line out from that point, but I preferred we would continue with the road and fence line and embrace it all in the sale and I did not want that little strip running to the road and as I was paying a good price for the land, I preferred to run south to the Bolt lot and not take that portion left out and so stated to Mr. Maxwell at the time and that is the way we traded and ran the land out."

The small triangular tract shown in black on the following plat, and admittedly not included in the description of the land conveyed by Maxwell and wife to Cohagen, is the land in controversy:

and admittedly not including the triangular strip in controversy. Cohagen took possession of all lands described in his deeds, and also the strip in controversy, and Harmon did likewise upon his purchase from Cohag-

Shortly after the above conveyance, Mrs. Arie Maxwell died. Subsequently the community lands of Maxwell and wife were partitioned; H. C. Maxwell receiving a conveyance to the land in controversy, described as the unsold portion of the Pruitt tract. On July 19, 1927, appellee Harmon purchased from Cohagen the Bolt and the 9.29-acre tracts; the description of same being identical with that in previous deeds to Cohagen

en. On November 7, 1929, Harmon conveyed the land purchased by him from Cohagen to J. L. Maxwell, reserving to himself one-half of all oil, gas, and minerals. His conveyance followed the description of the land as contained in the deeds from Maxwell to Cohagen to Harmon, which did not include the land in controversy.

On March 18, 1932, H. C. Maxwell conveyed the land in controversy to Leadell Pool.

The other appellants claim under Pool. One of these drilled an oil well thereon, and has taken therefrom a large quantity of oil.

In December, 1932, appellees Harmon and wife filed suit for the triangular strip in controversy, which amounts to about one-fourth acre, claiming title to same under the ten year statute of limitation. Later they were joined by six of the children of H. C. Maxwell and wife, Arie Maxwell, who asked for a reformation of the partition deed between themselves and their father, alleging mutual mistake in its execution. All plaintiffs prayed for judgment for the title and possession of said strip of land and the value of all oil produced therefrom. The answer of appellants sufficiently raised the issues we presently discuss and will not be reproduced.

The two following issues were submitted and answered by the jury:

"Special Issue No. 1. Do you find from a preponderance of the evidence in this case that the plaintiffs and those under whom they claim, either in person or through a tenant or tenants, or partly in person or partly through a tenant or tenants, held notorious, exclusive, peaceable and adverse possession of the strip of land in controversy in this law suit, cultivating, using or enjoying the same for any period of ten years, or longer prior to the time this law suit was filed?

"Answer 'yes' or 'no' as you find the facts to be.

"Answer: Yes.

"Special Issue No. 2. Do you find from a preponderance of the evidence in this case that the deed dated May 21, 1931, from Walter Maxwell, et al., to H. C. Maxwell, introduced in evidence in this case, included therein, by mutual mistake on the part of the grantors and grantees, the land in controversy in this law suit, if the said deed does so?

"Answer 'yes' or 'no' as you find the facts to be.

"Answer: Yes."

The question of improvements in good faith was submitted to the court.

Judgment was entered for title and possession of the land sued for: "Together with the oil well located thereon, including the casing and all other fixtures used in connection therewith situated on said premises and all personal property of every kind or character and of whatever nature situated on said tract of land and connected with or incidental to the said oil well or the operation thereof, in the following proportions, to-wit: Eugene

Harmon and wife, Estelle Harmon, an undivided three-fourths (¾) interest; Walter Maxwell, Luther Maxwell, Ida Mae Cohagen and husband, Elmo Cohagen, Thelma Wood and husband, Elton Wood, Addie Lee Bynum and husband, W. P. Bynum, and Clattice Beasley and husband, LeRoy Beasley, jointly an undivided one-fourth (¼) interest."

It was further found that: "The defendants had both actual and constructive knowledge and notice that the plaintiffs claimed and were asserting fee-simple title to the lands and premises involved in this suit; and the court further finds and determines that the defendants in making said improvements on said premises were willful trespassers. * * * and that plaintiffs are entitled to recover of and from the defendant Overton Refining Company said highest intermediate market value of said oil or the total sum of Twenty Thousand Two Hundred Twenty Five and no/100 ($20,225.00) Dollars."

It will be observed from the above statement that Harmon's possession had to be tacked to that of his predecessor Cohagen, in order to complete and have title under the ten-year statute of limitation. Harmon had possession for less than three years and Cohagen nearly nine. The testimony of the two sufficiently, but very meagerly, raised and supports issue No. 1, above set out, in our opinion, and will not be here set out in detail. However, after testifying on direct examination positively to possession of and a claim to said strip for the entire period between the dates of deeds aforesaid, Cohagen further testified on cross-examination, in part as follows:

"Q. You never claimed one inch of this land, except what you bought under your field notes, did you? A. No sir.

"Q. You never did? A. No sir.

"Q. You never did buy it? A. No sir.

"Q. And you never did sell it? A. No sir.' * * *

"Q. You told him, you sold all that you bought and claimed? A. Yes, sir.

"Q. All you ever claimed there? A. Yes sir.

"Q. And sold it by a deed, that you gave to Mr. Harmon? A. Yes, sir.

"Q. And you didn't claim anything else there? A. I told Forrest Wooster that, when he came to me.

"Q. You never did claim anything, except what you bought, did you? A. No sir.

"Q. You wouldn't claim it at all, except what you bought? A. No sir.

"Q. You never did tell anyone that you claimed anything, except what you bought? A. No sir.

"Q. And you don't want anything now, or anyone else to get anything you didn't buy? A. Which?

"Q. You don't want to get anything you didn't buy or for anyone else to get anything you didn't buy? A. No sir."

The evidence further shows as above that in the deed to and from Harmon the strip in controversy was not included, though possession of same was delivered to Cohagen and by him to Harmon. It further appears that, when the controversy first arose, Harmon asserted no claim of a fee-simple title, but in a letter dated October 4, 1932, to one of the appellants, claimed "one half of the minerals under the land mentioned above."

Under the above state of facts appellants correctly contend, we think, that the trial court erred in refusing to give the following charge requested by appellants: "Gentlemen of the jury, do you find from a preponderance of the evidence that J. M. Cohagen claimed the particular tract of land in controversy, when he entered upon and during his possession of the land, sold to him by H. C. Maxwell."

Closely related to the above is the further contention, which we sustain, that the trial court erred in refusing, after proper exception, to define the term "privity of estate" used in special issue No. 1 above set out.

These are kindred questions, and much of what is said of one applies also to the other.

Conflicts between the testimony of a witness on direct and cross examination regarding a fact essential to establish as a basis for a recovery, and upon which a verdict either for or against a party to the suit could be based, raise a jury question. Threadgill v. Shaw (Tex. Civ. App.) 148 S. W. 825. Such question may not be found to exist as a matter of law by the court and a party's constitutional right to a jury trial be thus denied.

An occupant of land cannot acquire title thereto under the ten-year statute of limitation, unless he claims same (Rev. St. 1925, art. 5510). McMurrey v. Lampkins (Tex. Civ. App.) 47 S.W.(2d) 851; Rushing v. Lanier, 63 Tex. Civ. App. 40, 132 S. W. 528, 531. This is clearly implied, if not expressly required, by the terms of the statute itself.

It is equally clear that the possession of Harmon could not be tacked to that of Cohagen unless the latter claimed the land in controversy and transferred such claim to Harmon. Rushing v. Lanier, supra; 2 Tex. Jur. § 89, p. 169, and numerous authorities there cited.

The court recognized this by expressly giving in charge the terms of article 5516, R. C. S. 1925, as follows: "Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them."

"Privity of estate," as respects adverse possession, may be shown by proof that the earliest occupant's possession and claim passed or was transferred by agreement, devise, gift, or inheritance. McAnally v. Texas Company (Tex. Civ. App.) 32 S.W.(2d) 947; 2 C. J. p. 91. The transfer, however, need not be by actual deed. Wallace v. Neumann (Tex. Civ. App.) 74 S.W.(2d) 283.

We quote: "The fact of privity is not established where it appears simply that the land was occupied by different persons successively" (citing Warren v. Frederichs, 76 Tex. 647, 13 S. W. 643; Truehart v. McMichael, 46 Tex. 222; Wheeler v. Moody, 9 Tex. 372, 377; Rushing v. Lanier, 63 Tex. Civ. App. 40, 46, 132 S. W. 528; Moore v. Loggins [Tex. Civ. App.] 114 S. W. 183, 186; Western Union Beef Co. v. Thurman [Tex.] 70 F. 960, 17 C. C. A. 542), "there being nothing to show that the claim of the earlier was transferred to the latter occupant by contract or otherwise" (citing Rushing v. Lanier, 63 Tex. Civ. App. 40, 46, 132 S. W. 528). 2 Tex. Jur. 169, § 89.

Viewing the record as a whole, the issue of whether or not there existed a privity of estate between Cohagen and Harmon was clearly raised. If such relation did not exist, Harmon's title by limitation fails. It therefore became highly important for the jury to understand the meaning of the technical term "privity of estate." The trial court, after timely and proper exception, refused to define same. This was prejudicial error. The case of Alderete v. First Real Estate & Investment Co. (Tex. Civ. App.) 247 S. W. 620, does not hold otherwise as contended by appellees. In that case possession was in one person only, and the point presented was whether the term "privity of estate" under such fact should have been defined, and the court properly held that a failure to define it was not misleading. Certainly a "privity of estate" could not exist if only one posses-

sion was shown and relied on. The trial court would, of course, not err in failing to define a term that was entirely foreign to the case on trial. The term is a legal one and highly technical. The statute (Rev. St. 1925, art. 2189) requires a definition of such terms when necessary to use same in submitting special issues and citation of authorities would be a waste of space.

Many other of appellant's propositions are improperly presented and will not be discussed. In view of another trial, we do not decide the sufficiency of the evidence to sustain the court's finding that appellees were willful trespassers. We will say in passing, however, that the evidence quoted in the briefs of the parties to sustain such finding has not fully convinced us that the trial court's conclusion was a correct one.

Nor do we agree with appellees that the case of Early-Foster Co. v. Mid-Tex. Oil Mills (Tex. Civ. App.) 208 S. W. 224, 226, sustains the trial court's judgment for the highest intermediate value of the oil between the date of its conversion and the trial. It is therein pointedly held under that particular record that the proper measure was the highest intermediate value to the date of *filing the suit.* (Italics ours.) The proper measure of damages in case of a willful conversion of chattels of a fluctuating value has recently been exhaustively reviewed by this court in the case of Security State Bank et al. v. Spinnler, 78 S.W.(2d) 275, to which we refer for citation and discussion of the authorities, including those relied on by appellee.

For the errors pointed out, the judgment of the trial court is reversed and cause remanded.