## 330. HILL & MOULTRIE *v.* WHEELER.

On the trial of an action by real-estate agents for the recovery of a commission on the sale of property, it was error to award a nonsuit, where it appeared, from the evidence, that the defendant had placed the property in their hands to sell upon specified terms, and that, pending negotiations between the agents and their customer, they were prevented from selling, or at least from concluding their negotiations for a sale, by the action of their principal in taking the matter into his own hands, and, without notice to them, selling the property at a lower price to the customer procured by their efforts. In such a case the good faith of the parties and the question as to whether the stipulated price was waived, as well as whether a purchaser would have given the stipulated price, are all questions of fact for the jury.

Complaint, from city court of Floyd county—Judge Hamilton. December 13, 1906.

Argued May 6,—Decided July 18, 1907.

*Lipscomb & Willingham,* for plaintiffs.

*Seaborn & Barry Wright,* for defendant.

Russell, J. We think the court erred in awarding a nonsuit in this case, for we think that there was an issue of fact involved in the evidence, upon which only the jury could legally pass. The question was certainly raised by the testimony adduced in behalf of the plaintiff, as to whether the defendant acted in good faith in selling the property himself at a lower price than he had at first stipulated, after using the services of the real-estate agents to find a purchaser for it and to interest him in its advantages. Under the testimony for the plaintiffs, the jury could have found (in the absence of any further evidence) that there was a waiver of one of the terms of the sale on the part of the defendant,— that is, as to the price at which defendant was willing to sell,— and that the defendant himself prevented the sale being made by the real-estate agents, to prevent them from receiving commissions. It appears, from the testimony of the plaintiffs, that the

defendant and Captain Garlington, to whom he sold, met several times in the plaintiffs' office, and made two or three trips, after the first one, to view the premises, and that in all of the negotiations up to the very time of the sale the plaintiffs were engaged in assisting the defendant to sell the property,—not necessarily, so far as appears from the evidence, at the price first set by the defendant, but at some price to be agreed upon by seller and buyer. To use the language of one of the plaintiffs, in the evidence, "We were constantly negotiating, in trying to get them together and get them to agree." It further appears, that the defendant never notified the plaintiffs that he had taken the property out of their hands; that he did not withdraw it, but after several different meetings and various propositions and counter-propositions, and while negotiation was still pending between the plaintiffs and their customer, the defendant himself sold the property.

We do not mean to say that the plaintiffs were obliged to recover,—that the evidence demanded a verdict in their favor; and indeed the jury might find, on evidence adduced by both parties, that they were not entitled to recover; but we are clear that the evidence, construed in the light of decisions in our State, would have authorized a finding for the plaintiffs. Where the evidence, in any view of the case, would authorize a finding for the plaintiffs, the case should not be taken away from the jury by a judgment of nonsuit. While a real-estate agent, to recover commissions from his principal, must show that he was employed to sell land in which the principal had an interest, and that he procured a customer ready and able to buy upon the terms proposed by the seller, still there may be an implied modification of the terms of sale, arising from the conduct of the seller, which would be equivalent to an express modification. The price at which property is to be sold is only one of the terms of the sale, and may be modified by the principal, as any other term. And if the owner of real estate who has placed it for sale in the hands of a real-estate agent interferes with the sale by his agent, by modifying the terms of sale as regards the price, he would be just as much liable for his commissions as if he had interfered in any other way. Under the principle laid down in *Doonan* v. *Ives, 73 Ga.* 302, if the brokers set to work to sell the property and procured Captain Garlington

as a customer, or one likely to buy from them, and, pending their negotiation with him, the owner interfered, knowing or having information that they were negotiating with the customer, and sold the property to the customer thus procured by them, even with some modifications of the price at which he had authorized them to sell, he could not defeat their commissions, "because it would be the fraudulent taking advantage of their labor without paying for it." If the negotiation in which the plaintiffs were engaged had terminated, and they had abandoned all further efforts to sell, or if the defendant, after reasonable notice to them (if no time limit had been agreed upon) had withdrawn his property from their hands, and thereafter himself sold to Garlington, or any other purchaser, without the plaintiffs' aid, they could not recover. "Because one puts property in the hands of a broker to sell, it does not follow that he himself can not sell. If he does not use their labor to help him, he owes them nothing; if he does use it and puts in to take the trade—its consummation—out of their hands so as to escape paying them, then, ex æquo et bono, he does owe them, and must pay just what they could have made by the contract if he had not prevented it. This is sound sense and good law."

In this case it is undisputed that the plaintiffs brought the defendant and Captain Garlington, who purchased his place, together; that previous to this, Mr. Moultrie, one of the plaintiffs, had interested Garlington in the property, and had, at his own expense, carried him several miles to see it and taken the trouble to show it to him. On several different occasions, after the defendant and Garlington began to discuss the matter, they used the plaintiffs' office and maps, in discussing the proposed trade, and Mr. Moultrie did all he could to effect an agreement. Each time Garlington would say that he would give $9,000. According to the evidence, he never did say that he would not give $10,000, the price agreed upon between the seller and his agents; nor did the seller in these conferences say that he would not take less than $10,000. As Moultrie was present, engaged in assisting the defendant to sell, we think it more fair to presume that the stipulation as to price was waived by the seller, than that he should receive the services of the agent for nothing, in view of the fact that he did not withdraw the property from the hands of the agents or lead them to suppose that he would undersell them.

The question of good faith was one that should have been sub-mitted to the jury. It should have been left to the jury to say whether, by selling to Garlington at $9,000, instead of for $10,-000 to a purchaser procured by the plaintiffs, the defendant did not ratify all of the efforts of the plaintiffs to sell, and did not himself waive one of the terms of the sale, to wit, the original price fixed by him in his agreement with the real-estate agent. In *Odell* v. *Dozier,* 104 *Ga.* 203, 30 S. E. 813, it was held that the liability of the principal to the agent was not affected by the in-ability of the purchaser, procured by such agent, to comply with the original terms of sale. In this case the purchaser, instead of being *unable,* was *unwilling* to comply with the term, so far as the price was concerned; and, according to the testimony of the plaintiffs, the defendant, without notifying his agents or giving them any further opportunity to perfect the sale at the higher price, sold at a lower price to their customer, and thus perhaps prevented them from making the sale at the higher price. If this is true, the plaintiffs are entitled to recover. If it is not true, the defendant can show it and relieve himself from a recovery. In any view of it, it is a question for the jury, and not for the court to determine. *Judgment reversed.*