## 1344. HUMPHRIES & JACKSON *v.* SMITH

1. Usually the word "sale" denotes a completed, mutually binding contract; but under contracts creating the ordinary relationship of principal and real-estate broker, and providing commissions for the latter, the broker has made a sale whenever, through his influence, a person ready, able, and willing to buy on the terms proposed is brought to the principal, though, through the fault or disinclination of the principal, no actual sale is ever consummated. Usually, however, the broker is not entitled to commissions on sales made by the principal and uninfluenced by anything done by the broker.

2. Where the principal appoints, not a broker, but an exclusive sales agent, and agrees to pay a commission upon "sales," the agent is entitled to commissions only upon consummated sales, and not upon mere executory contracts.

3. Where a landowner placed his property in the exclusive control of a real-estate agent for a limited period, agreeing to pay him a designated commission on all sales, even though the language of the contract should be construed to be broad enough to render the principal liable for commissions upon sales made by himself, the real-estate agent can not recover commissions on a sale made after the expiry of the contract, although, during the life of the contract, the landowner gave a third person, then neither ready nor willing to buy, an option to purchase the property, under which the property was afterwards sold to him, it appearing that this transaction came about in no wise through the influence of the real estate agent, and was not an attempt on the part of the owner to avoid the effect of this contract, and that the purchaser never became ready or willing to buy before the expiry of the agent's contract.

Complaint, from city court of Atlanta—Judge Calhoun. July 18, 1908.

Argued November 12,—Decided December 22, 1908.

*Owens Johnson, W. E. Talley,* for plaintiffs.

*P. F. Smith, Walter McElreath,* for defendant.

POWELL, J. We find it unnecessary to enter into a discussion of many of the nice questions of law which were argued before us. As presented by the pleadings and the proof thereunder, the case is simple, in that it involves but one question. It is alleged by the plaintiffs and admitted by the defendant that the former were a firm of real-estate brokers, and that the defendant owned, in the

suburbs of Atlanta, a tract of twenty-three acres of land, divided into small lots, which he placed in the hands of the plaintiffs, under the following contract: "I have this day placed in the exclusive control of Humphries & Jackson all my property on Lumpkin Street, just outside of West End, consisting of twenty-three acres, more or less, for a period of three months from this date. No one shall have a right to sell any of the lots, except the said Humphries & Jackson, without the payment of their commissions. I agree to pay them ten per cent. on all sales. March 2, 1904, P. F. Smith." It is also alleged and undisputed that the plaintiffs advertised the property and made several sales of lots during the life of the contract, and that for these sales the brokers received the commissions named in the contract. The plaintiffs further alleged, that on May 17, 1904, during the life of the contract, the defendant personally sold the bulk of the property to one McClatchey, who represented the Louisville Property Company; for the sum of $15,-000, and that "under said contract, petitioners are entitled to ten per cent. commission on the sale of said property for fifteen thousand dollars, which is fifteen hundred dollars, and petitioners sue for the same." The issue came upon the questions whether a sale was made during the life of the contract, and whether the terms of the contract were such as to render the defendant liable for a sale made by himself without the assistance of the broker. Our answer to the first question will preclude the necessity for deciding the second. On the trial it was mutually admitted, that before the date on which the contract of the broker expired, the defendant gave to McClatchey, in consideration of one dollar, an option, by the terms of which he might buy the property within sixty days at the price of $15,000, and that after the expiry of the broker's contract, the Louisville Property Company, to whom McClatchey assigned the option, accepted the terms and bought the property at the price of $15,000. This sale was uninfluenced by anything said or done by the brokers. McClatchey took the option upon the property for the purpose of seeing if it could be made available for a special purpose, to which it was afterwards devoted. The initial question therefore narrows to this: Was the giving of the option, under these circumstances, such a sale of the property as to entitle the plaintiff to the commissions stipulated under the contract? The question whether the defendant breached the contract, by putting

himself in a position where it would be difficult or impossible for him to comply with it, is not in the case; no damages are alleged on that account. The suit is directly and solely (save only as to a small item now not material) an action for $1,500 as ten per cent. commission accruing upon a sale of the property within the life of the contract.

1. The commissions were to be paid upon sales. The verb "sell" and the noun "sale" vary in meaning, according to the different contexts in which they are used. Ordinarily a sale is an executed contract—a completed transaction binding on seller and buyer alike. In contracts creating the relationship of principal and real-estate broker, however, a different meaning is generally given by construction. The broker "sells" when he finds a purchaser ready, able, and willing to buy on the terms proposed by the principal. A contract for commissions on sales entitles the broker to the specified compensation whenever, through his influence, such a prospective purchaser has been brought to the principal, though, by reason of some fault or disinclination of the latter, the sale is never completed, or is consummated on terms somewhat different from those originally proposed by the principal. *Hill* v. *Wheeler*, 2 *Ga. App.* 349 (58 S. E. 502) ; *Rice* v. *Ware*, 3 *Ga. App.* 579 (60 S. E. 301) ; Lindley *v.* Keim, 54 N. J. Eq. 423 (34 Atl. 1073). The relation is a confidential one, and its incidents are to be given effect in accordance with the purest dictates of mutual good faith. *Williams* v. *Moore-Gaunt Co.,* 3 *Ga. App.* 758 (60 S. E. 372) ; *Gann* v. *Zettler,* 3 *Ga. App.* 589 (60 S. E. 283). If the agent produces a would-be purchaser, ready, willing, and able to buy within the time allowed, and his principal and the would-be purchaser, instead of presently consummating the transaction, delay it by mutual consent until after the expiry of the agent's contract, he is nevertheless entitled to his commissions; in contemplation of the provisions of the ordinary form of brokers' contracts, a sale has been made within the time allowed. Goffe *v.* Gibson, 18 Mo. App. 1; Mechem on Agency, §966. A contract of sale binding both the seller and purchaser is a sale within the meaning of the rule applicable to such relations. Rice *v.* Mayo, 107 Mass. 550.

On the theory that the ordinary relation of principal and broker was established, the plaintiffs' case fails, however, because the prospective purchaser in the present case was in no wise induced toward

purchasing the property by anything done by the broker; and when the simple form of the relation exists, the principal may himself sell without liability for commissions, unless he takes the benefit of something done by the agent.   Mechem on Agency, §967; Civil Code, §3015.

2.   The plaintiffs, to avoid this result, say that they were not employed in the ordinary capacity of brokers, but that by the contract they were made exclusive sales agents.   If so, they were entitled to commissions only upon actual executed sales, and not upon executory contracts of sale.   Creveling *v.* Wood, 95 Pa. St. 152.

3.   Each contract by which one employs another to sell real estate must be construed according to its particular stipulations. In the present case we do not believe that it was within the intention of the parties, as gathered from the language of the contract, construed most strongly against the defendant (for it appears that he wrote it), that the principal should pay commissions on such a transaction as the one before us.   Smith gave a mere option, binding McClatchey to nothing, giving the maker no right against the taker or his assigns.   There is no suggestion that there was any effort on Smith's part to avoid his contract with the plaintiffs by delaying negotiations with the prospective purchaser until after the expiry of that contract.   The contract of the agents was about to expire.   They had succeeded in selling but a small part of the land.   Smith found McClatchey unwilling to buy at that time, but desiring an option to buy later if the company he was representing found it expedient to use the property for a special purpose, as they afterwards did.   He gave McClatchey an option, but, as appears from the evidence, obtained permission to sell off any of the lots for which the plaintiff might find a purchaser at any time before their contract of employment expired.   McClatchey and the company he was representing never became ready and willing to buy during the life of the plaintiffs' contract; the sale was not made until after it had expired.   The principles of law announced. herein fully justified the judgment rendered by the trial court in favor of the defendant.                    *Judgment affirmed.*