## 4231.  TRUITT *v.* ANSLEY.

1. An ostensible owner of land who employs a real-estate agent to sell it may so contract with the agent as that the agent's right to commissions will depend upon the validity of the principal's title to the land; or the contract may be of such a nature that the right to commissions will depend upon the agent's procuring one who will purchase without regard to the validity of the vendor's title. One might be willing to pay even larger commissions to an agent to sell property when his title is questionable or doubtful; or, but for this state of the title, he might not be willing to pay commissions at all; and no rule of law or morals forbids a real-estate agent from undertaking to sell property for an ostensible owner whose title is in dispute or doubtful, provided the agent does not fraudulently misrepresent the state of the title, or conceal from the proposed purchaser any material fact in relation to it which it is his duty to disclose.

2. In view of the conflict in the evidence as to the understanding of the parties with regard to the nature and terms of the contract, the court erred in directing a verdict.

DECIDED FEBRUARY 18, 1913.

Complaint; from city court of Atlanta—Judge Reid.  April 3, 1912.

*Alexander W. Smith, Wharton O. Wilson,* for plaintiff in error.
*Moore & Pomeroy,* contra.

RUSSELL, J.  The court erred in directing a verdict in this case. The direction of a verdict is error requiring a new trial, unless, under the evidence submitted, the case has resolved itself into a question of law.  As was held in *Davis* v. *Kirkland,* 1 *Ga. App.* 10 (58 S. E. 209), the court is allowed to direct a verdict only when there is no issue of fact, or when there is but one solution which will fuse the proved facts into homogeneity, and when, after throwing the light of the evidence in every direction, it presents but one view, and it is certain that no other verdict than that directed can be legally reached.

It appears, from the evidence, that Truitt owned a farm in Bartow county, and employed Ansley, as a real-estate agent, to sell this farm, or exchange it for real estate in the city of Atlanta. After something like a year's negotiation, Ansley found a purchaser in the heirs of E. P. Black, who were willing to sell their property located on the corner of Peachtree and Sixth streets, and to accept, at a valuation of $17,500, Truitt's farm in Bartow county as part payment of the purchase-price.  Truitt and the Blacks entered into a contract, which is set out in the record, by

which Truitt agreed to convey to them two tracts of land therein described, aggregating about 1,200 acres. The contract stipulated that Truitt was to convey these tracts of land, on or before the first day of November, by proper warranty deed "free from any claim, right or contract on the part of W. D. Craig and J. M. Craig and J. Z. Estes and B. F. Williams, or either of them, or their representatives or assigns, and free from all liens and adverse claims of whatsoever nature in favor of whomsoever." It was stipulated that the titles to the Atlanta property should be examined by Truitt, and the titles to the Bartow county property should be examined by the Blacks, and "if the title to either of said parcels of property [should be] shown, upon examination, not to be good and merchantable" in the party proposing to sell it, the contract should be at an end. The testimony is undisputed that upon examination of the titles of the Bartow county land of Truitt, the attorneys of the Blacks were of the opinion that the said titles were not good or merchantable, though it does not appear, as a fact, why they were not good, nor upon what principle of law they were deemed to be invalid. Some reference is made to the fact that one of the counsel, upon the examination of the will of one Hawkins, reached the conclusion that Truitt owned only a life-interest, and not the fee, in the farm land which he proposed to sell; but the will of Hawkins does not appear to have been exhibited to the court. However, Truitt seems to have conceded that his title was not merchantable; the contract was treated by both parties as a nullity, and the Blacks later sold the Peachtree-street property. Ansley demanded of Truit $875, as his commission on the sale at $17,500, at the rate of five per cent., and the court directed a verdict in his favor for that amount, with interest.

If this were all that appeared in the record, a verdict in favor of the plaintiff might be sustained, as being supported by the facts. The judge, in directing a verdict, no doubt, based his judgment upon the theory that these were the only material and substantial facts, because he ruled as follows: "Considering the two contracts together, and considering them as evidence in the case, the court is of the opinion, upon all the evidence, including the two contracts aforesaid, that the plaintiff is entitled to recover; and, there being no dispute in the evidence as to the amount of the recovery, the court directs a verdict in favor of the plaintiff for the

amount sued for." If the contract between the Blacks and Truitt, to which we have referred, were controlling in this case, the judgment of the learned trial judge might be right. But, as we view it, this contract merely affords circumstantial evidence, which at best can only shed light upon what was the real contract between Truitt and Ansley. The fact that this contract evidences that Truitt agreed, upon certain terms, to sell the Blacks his land in Bartow county, and that in doing this he agreed to sell it free from any lien or incumbrance whatever, and to convey a title that would be good and merchantable, does not conclude Truitt from asserting that his contract with Ansley contained a different stipulation as to the title. This latter provision of the contract would be sufficient to dispute and destroy any assertion on the part of Truitt that the Blacks were obliged to take his land at the stipulated price without regard to the title; it would estop him from setting up any claim to that effect. It might successfully contradict any claim on the part of Truitt (if Ansley was the real-estate agent who procured the Blacks as purchasers) to the effect that Ansley had agreed to sell the property at some price although Truitt's title was doubtful. However, it would not necessarily have that effect; for, as Ansley had to prove, outside of the contract between Truitt and the Blacks, that he was the real-estate agent employed by Truitt, who procured the Blacks as purchasers, so also, if Truitt denies that the terms of his contract with Ansley were identical with those embodied in the contract into which he entered with the Blacks, Ansley must necessarily prove that the terms were the same. Truitt did deny that the terms were the same. He did not deny making the contract in this case with the Blacks, but he did deny that the terms of his contract with Ansley embraced the provision contained in his contract with the Blacks with reference to warranting the title. He asserted, on the contrary, that he distinctly informed Ansley that his title to the lots in question was doubtful, and suggested that as a reason why he was willing to take property instead of money. Furthermore, Mr. Wilson, as a witness for Truitt, testified to the same effect. It is true that the plaintiff testified that this was not one of the conditions of his contract with Truitt, and that he did not know, until after the contract with the Blacks was signed, that there was any difficulty or doubt in regard to Truitt's title; and he is cor-

roborated on this point by the fact that in the contract with the Blacks, Truitt agreed to convey a title free from any lien or incumbrance whatsoever or from whomsoever. Further, it is ordinarily to be presumed that one who offers real estate for sale includes in the offer a warranty that the title is good and merchantable. *Cowdery* v. *Greenlea,* 126 *Ga.* 790 (55 S. E. 918, 8 L. R. A.. (N. S.) 137); 26 Am. & Eng. Enc. L. (2d ed.) 106; Roberts *v.* Kimmons, 65 Miss. 332, 334 (3 South. 736). But unless this latter presumption is conclusive and can not under any circumstances be rebutted, the real question in the case is not what was the contract between the Blacks and Truitt, but what was the contract between Ansley and Truitt, and whether, if it be a fact that the contract was as Truitt testified, Ansley is entitled to any commissions at all.

We are unable to find any case where the point now before us has been involved, but unless the law forbids the ostensible owner of real estate to sell his interest, whatever it may be, and forbids him, in furtherance of such a sale, to employ an agent to sell it for him, it must be true that Truitt had the right to prove that his agreement to pay Ansley commissions was dependent upon Ansley's selling the land with such title as he informed him (the real-estate agent) he actually possessed, and not such as he would ordinarily be presumed to have. The whole question turns on whether Ansley knew or did not know, at the time he undertook to sell the land, that the title was doubtful, imperfect, or invalid. If he did, and undertook to sell under an agreement that his commissions depended upon the sale, regardless of the title, it would make no difference that Truitt afterwards bound himself to Black to make a good title, even if he had done so unqualifiedly; because it is well settled that the owner of realty can himself sell his land upon terms different from those under which he delegated to an agent the right to sell. But when the contract between the Blacks and Truitt is construed altogether, there was. no express warranty on the part of Truitt, other than that ordinarily presumed, that his titles were good and merchantable; for it was provided that his titles should be examined by the opposite party, and if found defective, by reason of the rights of certain named persons or for any other reason whatsoever, the $500 which he (Truitt) had paid on the Peachtree-street lot should be returned

to him, and the contract should be at an end. There is no provision in the contract subjecting the $500 to forfeiture in case of misrepresentation on Truitt's part as to his title, or any other stipulation for damages in such case. The contract is apparently very similar to the one in general use by real-estate dealers. Conceding that the evidence shows that Ansley procured the contract with the Blacks, Truitt's signature to this contract might be treated as a waiver of the terms he originally imposed upon Ansley, and the jury might find that it amounted to a novation, by which Truitt would be bound for commissions, in case Truitt's lack of title or defective title alone defeated the sale of his property. But does the implication of such a waiver create an estoppel at law? We think not. And if it does not, then the court could not direct a verdict upon this point.

There remains then only the naked question whether a real-estate agent could recover commissions for failure of the sale of property due wholly to the owner's defective title, when the agent was notified in advance that the title was defective. It is within the power of the ostensible owner of a tract of land so to contract with a real-estate agent as that the commissions of the latter will be dependent upon the validity of the principal's title to the land which he seeks to sell, or the contract may be of such a nature that the real-estate agent's right to collect commissions will depend upon his ability to procure one who will purchase without regard to the validity of the vendor's title. One might be willing to pay even larger commissions to a real-estate agent to sell property when his title thereto is questionable or doubtful; or, but for this state of the title, he might not be willing to pay commissions at all; and no rule of law or morals forbids a real-estate agent from undertaking to sell property for an ostensible owner whose title is in dispute or doubtful, provided the agent does not fraudulently misrepresent the state of the title, or conceal from the proposed purchaser any material fact in relation to it which it is his duty to disclose. Of course, the testimony for the plaintiff is to the effect that the agent had no knowledge of the defect, but there is ample testimony for the defendant to authorize the jury to find that the plaintiff did know, in advance of Truitt's contract with the Blacks, that the trade would perhaps fall through by reason of the defect in Truitt's title. The jury would be au-

thorized to find that he knew as much about the defect in Truitt's title as Truitt himself knew. In this view of the matter, to allow a real-estate agent to collect commissions in a case where he knew that the sale could not be effected, upon the principle that the sale was defeated by the very defect which he knew in advance would defeat it, it seems to us, would be a travesty on common justice. In all the cases where an agent has been allowed commissions though no sale was in fact effected by his efforts, the finding has been supported by the fact that the agent did all that he had contracted to do, and that there would have been a sale, but for some act on the part of his principal for which he (the agent) was not responsible, or but for a defect in the title, of which the agent, so far as appeared, had no knowledge. Of course, in such a case the gent has done all that he contracted to do; because, if he procured a purchaser, who was ready, able, and willing to buy upon the terms proposed by the seller, nothing remained but for the seller to accept the purchase-price and execute a conveyance; and neither of these things could be done by the agent. And in the cases in which, although, because of defect of title, the sale was not consummated, the real-estate agent was allowed to collect his commissions if he procured a purchaser who was willing to take the property on the terms and at the price proposed by the seller but was unwilling to buy a bad or doubtful title, the recovery was allowed on the theory that one who offers to sell land may be presumed to have title, and that, in the absence of disclosure by the owner to the agent of any defect in his title, the agent acted upon that presumption, and, having done all that it would have been necessary for him to do in case the title had been good, the owner would not be permitted to have the value of his services, when, if the facts had been disclosed, such services would have been unnecessary and would not have been rendered by the agent. The fact that Truitt testified that he told Ansley several times that, though there was a question about his title, it was not clear, and that he was perfecting it just as fast as he could, does not show that Ansley did not have notice of the defect in Truitt's title, or that Truitt was obligating himself to clear away the difficulty. He only said he was perfecting the title as fast as he could; and if Truitt's statement is true, it was Ansley's duty not to offer the property for sale until Truitt notified

him that he had succeeded in perfecting the title; unless he was willing to take the risk of having any proposed contract of sale he might make abrogated on account of the defect in the title.

In *Humphreys* v. *Smith,* 5 *Ga. App.* 342 (63 S. E. 248), we held that a contract of sale, binding both the seller and the purchaser, is a sale within the meaning of the rule applicable to such relations, and cited *Rice* v. *Mayo,* 107 Mass. 550, as authority for that principle. In neither of these cases, however, was the point that the agent had notice of the defect in the title presented. They were cases in which the ordinary principle to which we have above referred was applied. The agent, in good faith, had done all that he had agreed to do; the failure of the sale was due to matters over which the agent had no control, and the sales were made by the agent without any notice whatever that there was a defect in the title, and acting upon the presumption that the owner had a good title. For the same reason, the case of *Fenn* v. *Ware,* 100 *Ga.* 565 (28 S. E. 238), is not in point; and this is true also as to the ruling of the Supreme Court of Nebraska in *Lunney* v. *Healey,* 56 Neb. 313 (44 L. R. A. 593, 76 N. W. 558). All of the cases cited by counsel for the defendant in error are cases in which the real-estate agent had the right to assume that the owner had a good and sufficient title, and that if he (the agent) performed his contract by bringing to the owner a purchaser who was ready, able, and willing to buy upon the terms proposed by the owner, a sale would be consummated, and his commissions would therefore be earned. In the present case, according to the evidence for the defendant, the real-estate agent knew that his commissions would not be earned if the rule above stated were applied, unless the purchaser would accept from the owner a disputed or doubtful title; and he certainly had no right to assume that the purchaser would do this. In *Davis* v. *Morgan,* 96 *Ga.* 518 (23 S. E. 417), *Gresham* v. *Connally,* 114 *Ga.* 908 (41 S. E. 42), *Phinizy* v. *Bush,* 129 *Ga.* 486 (59 S. E. 259), and 135 *Ga.* 678 (70 S. E. 243), and in *Knapp* v. *Wallace,* 44 N. Y. 477, *Birmingham L. & L. Co.* v. *Thompson,* 86 Ala. 146 (5 South. 473), *Martin* v. *Ede,* 103 Cal. 157 (37 Pac. 199), *Conkling* v. *Krakauer,* 70 Tex. 735 (11 S. W. 117), it was held that a real-estate agent was entitled to his commissions notwithstanding the purchaser declined to take the property, because of defects in the title or because there were incumbrances against it; but in none of

these cases was the point with which we are now concerned involved, for in none of them was the agent put upon notice that the title of the proposing seller was defective or doubtful. Each of these cases falls within the general principle to which we have heretofore adverted.

In the case of Roberts v. Kimmons, 65 Miss. 332, 334, cited supra, it was held that a contract containing a condition that the title shall be made clear and satisfactory to the purchaser is but an expression of what is implied by law in the absence of an agreement that the purchaser will take the risk of the title, and will not bar the broker's right to commissions if the title proves defective. If that statement of the rule be true, e converso it is equally true that if a broker attempts to sell property knowing that the title thereto is defective, he can not recover commissions if the defect prevents a consummation of the sale.

We think, therefore, that the trial judge should have submitted to the jury the issue of fact involved in the conflict existing in regard to the terms of the original contract between Truitt and Ansley, and that he erred in directing a verdict for the plaintiff. If, upon another trial, it should appear that the contract was as contended, it would be the duty of the jury to render a verdict in his favor; but if the jury should find the testimony of the defendant and his witnesses to be the truth of the case, the verdict should be for the defendant. While the law does not intend that any man shall obtain for naught the services of another, rendered in good faith in his behalf, it does not permit one who performs services for another, knowing at the time they are useless, void, and nugatory, to thereafter obtain compensation for efforts which, to say the least, might have been avoided. *Judgment reversed.*