Graham, Judge,
delivered the opinion of the court:
This case involves the construction and meaning of sections 600 and 602 of the act of October 3, 1917, 40 Stat. 300, 317, 318, entitled “An act to provide a revenue to defray war expenses, and for other purposes.” These sections are part of Title VI of this act dealing with “ war excise ” taxes. The articles mentioned therein and made subject to tax are new and by way of addition to the miscellaneous subjects of tax contained in the act of September 8, 1916, 39 Stat. 756, under the title therein of “Miscellaneous articles.” *265 The subject matter and wording of these sections were after-wards to some extent changed by the act of April 24, 1918, under Title IX of said act dealing with “excise taxes.” An inspection of these two sections discloses that the tax fundamentally was intended to be and was what is known as a sales tax; that is, a tax on the selling price of the article taxed.
The question involved here is whether a retailer who is also a wholesaler is liable for a tax on machines sold at retail under said sections 600 and 602.
Section 600 levied a tax on the sale price of the articles sold by the manufacturer, producer, and importer. The section covered 10 subdivisions, relating to different classes of articles, including automobiles, automobile trucks, automobile wagons, and motor cycles in one subdivision; piano players and graphophones, etc., in another; moving-picture films in another; and in other subdivisions are athletic articles, toilet articles, jewelry, cameras, pills, and chewing gum. As stated, this tax was payable by manufacturers, producers, and importers. Section 602 levied an additional tax upon all of these different articles, except moving-picture films, of one-half of the tax imposed by each of the said subdivisions upon the sale of the articles mentioned therein where the articles at the time of the passage of .the act were “held and intended for sale by any person, corporation, partnership, or association other than (,1) a retailer who is not also a wholesaler, or (2) the manufacturer, producer, or importer thereof.”
It will be seen that this additional tax is on what the marginal note of the statute denominates “floor stock” which is “ held and intended for sale.” It thus appears that in order to be subject to this tax the article must be “held and intended for sale ”; that is to say, if it has already been “ sold ” it is not subject to the tax, whether in the hands of a retailer, or a retailer who is also a wholesaler, or a wholesaler, or manufacturer, producer, or importer. So that the first question to be determined is whether under the contract of sale used by the plaintiff in transferring these machines *266 to the individual purchasers thereof they are to be treated as “ sold ” or as “ held and intended for sale.”
Before discussing the contract specially it is to be noted as indicative of the purpose and intention of Congress that the subsequent revenue act of February 24, 1919, in dealing with this same question of “ excise taxes ” and sales of automobiles, provides that upon articles “sold or leased ” by the manufacturer, producer, or importer a tax shall be levied, indicating that “leased” articles were to be treated as “sold” articles.
The conclusion from the foregoing would be that cars sold and delivered under a lease where the vendor retained title were not “ held and intended for sale ” within the meaning of section 602, and that the plaintiff, therefore, was not liable for a tax on articles leased. However, attention has been directed to the concluding paragraph of said section 602, which reads as follows:
“Nothing in this section shall be construed to impose a tax upon articles sold and delivered prior to May ninth, nineteen hundred and seventeen, where the title is reserved in the vendor as security for the payment of the purchase money.”
This paragraph conveys the suggestion that it was the intention of Congress to treat a sale and delivery of a car “ where the vendor retained title ” not as a sale, and that if the car was transferred to a lessee under a lease similar to that in question here, it was to be treated as a car “ held and intended for sale.” It is not possible to reconcile this suggestion as to the intention of Congress with the apparently plain purpose of the act as hereinbefore stated, as it is in substance treating an article sold and delivered under a so-called lease as not a “ sold ” car. This, it will be seen, would exempt from tax manufacturers, producers, and importers where the cars had been sold and delivered under a so-called lease as not being “ sold ” cars.
The provision hereinbefore quoted with regard to moving-picture films and the provision of the act of February 24, 1919, seem to clearly indicate that Congress intended to *267 treat “ leased ” articles as “ sold ” articles. We therefore reach the conclusion that an article sold and delivered under a so-called lease, even where the vendor retains the title, is a sold article, and that being a “ sold ” article it is not an article “ held and intended for sale,” and consequently the vendor is not liable for the tax imposed by section 602.
The character and purpose of the so-called lease which was used in the sales in this case are not to be judged by the name applied to it. It was clearly in the nature of a conditional sale, but a sale nevertheless, and the instrument was intended as a mere security for deferred payments. Nearly half of the purchase price had been paid by the purchaser upon the delivery of the machine. His notes had been given for the balance and doubtless were promptly discounted at some bank by the vendor with the so-called lease attached as security, thus enabling the vendor to at once get the entire purchase price. So long as the vendee complied with the terms of the sale the vendor could not interfere with his possession and use of the machine, and for all practical purposes it was the vendee’s machine. It could not be taken from him and sold and delivered by the vendor to a third party. The very purpose of the parties in making this arrangement was clearly to accomplish a sale and purchase under which there was a delivery which is inconsistent with the view that the machine was held and intended for sale by the vendor. He could only sell it upon default by the vendee. It was unquestionably a sale, and after the machine had been delivered to the purchaser to say that it was still “ held and intended for sale ” by the vendor because of the terms of the sale would be a purely technical and strained construction which it seems plain Congress did not intend should be given it.
Judgment will be entered for the plaintiff in the sum of $1,263.17, together with interest thereon at the rate of 6 per cent per annum from the date of payment by plaintiff, March 29,1920, to wit, the sum of $1,410.23. It is so ordered.
Hay, Judge; DowNey, Judge, and Booth, Judge, concur.