## CARTER et al. v. SLAVICK JEWELRY CO.

Circuit Court of Appeals, Ninth Circuit.
June 4, 1928.

Rehearing Denied July 2, 1928.

No. 5421.

Internal revenue ⬤⇒25—Sales tax on jewelry sold under conditional sales contracts held computable on contract price, not on price actually received; "sale" (Revenue Acts 1918 and 1921, § 905 [Comp. St. § 6309⅘f]).

Under Revenue Acts 1918 and 1921, § 905 (Comp. St. § 6309⅘f), taxing jewelry, when sold by or for a dealer, 5 per cent. of price for which sold, and Regulation 48 (Revised) art. 4, where plaintiff sold jewelry under conditional sale contracts under which it delivered possession of merchandise sold, but retained title until full purchase price was paid, and after partial collections charged off balances due as uncollectable, tax was computable on contract prices, and not amount actually received; "sale" being used in statute in broad sense, and not limited meaning requiring consummated transfer of title from one person to another for money consideration.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sale.]

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Wm. P. James, Judge.

Action by the Slavick Jewelry Company against John P. Carter, formerly United States Collector of Internal Revenue of the Sixth District of California, and others. Judgment for plaintiff (21 F.[2d] 874), and both parties bring error. Reversed.

Shepard Mitchell, M. B. Silberberg, and Alex W. Davis, all of Los Angeles, Cal., for plaintiff.

Samuel W. McNabb, U. S. Atty., and Emmett E. Doherty, Asst. U. S. Atty., both of Los Angeles, Cal., for defendants.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The Slavick Jewelry Company is engaged in selling jewelry at retail under a plan by which it delivers possession of the merchandise sold, but retains title until the full purchase price is paid. During the period from December, 1920, to December, 1924, it made approximately 700 of such sales, for the gross aggregate price of $72,746.80, and actually received on account thereof the aggregate sum of $49,115.55. In no case was the purchase price paid in full; in some instances the larger part remaining unpaid, and in some the balance being trifling, as, for example, $1 on a $60 or $75 sale, and $1.75 on an $85 transaction. At divers dates during the period mentioned the several balances, aggregating $23,631.25, were charged off to profit and loss, and the accounts closed, for what reason is not disclosed.

Section 905 of the Revenue Acts of 1918 and 1921 (40 Stat. 1124, and 42 Stat. 293 [Comp. St. § 6309⅘f]), provides for a tax upon jewelry "when sold by or for a dealer * * * equivalent to five per centum of the price for which so sold," and acting thereunder the Commissioner of Internal Revenue assessed a tax of $3,637.34, which is at the rate of 5 per cent. computed upon the gross contract sales price. The jewelry company, having paid this under protest and failed in its efforts to obtain a refund, brought this suit for a recovery. Holding that the assessment was valid upon the moneys collected, but to that extent only, the lower court entered a judgment in its favor for $1,181.56, from which both parties appeal.

It is undoubtedly true, as the jewelry company contends, that in its primary meaning the term "sale" imports a consummated trans-

fer of title from one person to another for a money consideration. But it is equally true that in private contracts and public laws it is not infrequently employed to characterize transactions which do not effect an absolute transfer. Illustrative are the following cases: Crall v. Commonwealth, 103 Va. 855, 49 S. E. 638, 640; Id., 103 Va. 862, 49 S. E. 1038; City of South Bend v. Martin, 142 Ind. 31, 41 N. E. 315, 29 L. R. A. 531; Watson v. Brooks (C. C.) 13 F. 540; Baton v. Richeri, 83 Cal. 185, 23 P. 286; Shainwald v. Cady, 92 Cal. 83, 28 P. 101; Pettenger v. Fast, 87 Cal. 461, 25 P. 680; Smith v. Mariner, 5 Wis. 551, 581, 68 Am. Dec. 73; Houston E. & W. Ry. Co. v. Keller, 90 Tex. 214, 37 S. W. 1062, 1063; Rice v. Mayo, 107 Mass. 550; Humphries, etc., v. Smith, 5 Ga. App. 340, 63 S. E. 248, 249; State v. Betz, 207 Mo. 589, 106 S. W. 64, 66.

Even in treatises on Sales the subject of so-called conditional sales is sometimes treated. See, for example, Mechem on Sales, § 558 et seq. Upon the street and·in the commercial world, such is common usage. Indeed, we have no other single word descriptive of transactions such as are here involved. One who procures an automobile or a piece of furniture upon the installment plan, where, as here, the dealer retains title, is commonly thought and spoken of as a purchaser, and when the dealer so disposes of merchandise it is treated and regarded as a sale, and moneys received on account thereof as sales receipts. In the absence of something in the act to suggest that Congress intended the term to be understood in its restricted primary meaning, we must assume it was used in the broad sense in which it is commonly understood. Measurably in point is the case of Earl C. Anthony v. United States, 57 Ct. Cl. 259.

While there is no charge of a fraudulent scheme to evade the payment of taxes, in construing the statute we may properly consider the consequence of the interpretation for which the jewelry company contends, namely, that there is no "sale" until every cent of the stipulated purchase price is paid. In that view a transaction would not become taxable so long as there remained any amount, however trifling, of the purchase price; and it would be a severe strain to assume that a dealer would endeavor to collect the last dollar when such collection would operate to impose upon him the duty to pay $3 or $4 to the government. As above indicated, the record here exhibits specific instances of such trifling balances.

To conclude, it is our view that Congress

intended no distinction between an absolute sale and a conditional sale, and that in either case the transaction is assessable when it is entered into. If it be suggested that under that construction the jewelry company here would be required to pay a tax upon a part of the sale price it has not received, the answer is that with equal force the same plea could be made upon behalf of the dealer who sells outright upon credit.

Our attention is drawn to a pertinent administrative regulation, article 4 of Regulation 48 (Revised), as follows: "The tax attaches when the article is sold; that is to say, when the title to it passes from the vendor to the purchaser. When title passes is a question of fact, dependent upon the intention of the parties as gathered from the contract of sale and the attendant circumstances. Where goods are segregated from other goods owned by the vendor, and it is the intention of both the vendor and the purchaser, at the time the goods are segregated, that they shall then belong to the purchaser, the title will be presumed to pass at such time. In the absence of any intention to the contrary, the title is presumed to pass upon delivery of the article to the purchaser or to a carrier for the purchaser. In the case of a conditional sale, where the title is reserved until payment of the purchase price in full, the tax attaches (a) upon such payment; or (b) when title passes, if before completion of the payments; or (c) when, before completion of the payments, the dealer disposes of the sale by charging off, by any method of accounting he may adopt, the unpaid portion of the contract price; or (d) when the vendor discounts the notes of the purchaser for cash or otherwise; or (e) when the vendor transfers his title in the article sold to another."

If, under the rule that in case of a doubtful statute the courts will give weight to an administrative construction thereof, the meaning thus put upon the term "sale" be adopted, the result here is manifestly the same, unless, as the jewelry company urges, we yield to one part of the regulation and ignore another, namely, subdivision (c). But such a course, if adopted, would have highly unreasonable results. Merchants doing a credit business upon the plan of the jewelry company here could collect the major part of the sales price, and by charging off the residue escape the sales tax entirely, and at the same time utilize the charge-off as a credit against gross income, and thus escape a ratable portion of that tax also; whereas, a merchant engaged in the same business, who extends credit without the protection afforded by conditional sale contracts, is required to pay the sales tax upon the entire price, whether collected or not.

We cannot believe that Congress contemplated such an unreasonable and discriminatory result. It follows that the judgment must be reversed, and such will be the order.

GILBERT, Circuit Judge (dissenting). I think that the judgment of the court below should be affirmed. Confessedly the contracts by which the plaintiff parted with the possession of its jewelry were not sales, within the accepted meaning of that term. But it seems reasonable to hold, as did the court below, that for the purpose of taxation they should be deemed to be sales from the time when the plaintiff abandoned further efforts to collect installments, as it did on December 31, 1923, and wrote them off as uncollectible. The Revenue Acts applicable to the case are those of 1918 and 1921. Under the authority of those acts the Treasury Department issued its Regulation 48, governing the enforcement of the acts as they related to the tax on the sale of jewelry. In the regulations promulgated under both acts it was provided: "The tax attaches when the article is sold; that is to say, when the title to it passes from the vendor to the purchaser. When title passes is a question of fact, dependent upon the intention of the parties as gathered from the contract of sale and the attendant circumstances. * * * In the case of a conditional sale, where the title is reserved until payment of the purchase price in full, the tax attaches (a) upon such payment; or (b) when title passes, if before completion of the payments; or (c) when, before completion of the payments, the dealer disposes of the sale by charging off, by any method of accounting he may adopt, the unpaid portion of the contract price."

Under the regulations, therefore, title is presumed to have passed to the purchasers in the present case at the moment when the plaintiff charged off the unpaid portions of the contract price. From the premise that the title passes at the time when the unpaid portion of the price is charged off, it seems logically to follow that the price for which the goods were sold, and upon which the plaintiff should be taxed, was the price which it realized, and not the price which the purchasers promised to pay, and which the plaintiff never expected to receive. Obviously, the regulations were framed with a special view to the known nature of the business of

selling jewelry on conditional sales. In thus carrying on that business, and retaining, until paid for, the title to the thing sold, the plaintiff was not doing business upon credit; it was not relying upon the financial standing of the purchasers, but upon the security which it had, in reserving title in the goods so contracted to be sold. I think it would be an unjust conclusion to hold that it must pay a tax upon a price which it never expected to realize, and which, in the very nature of the business in which it was engaged, it never could realize. In Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211, it was held that in cases of doubt statutes referring to taxes "are construed most strongly against the government, and in favor of the citizen."

I am unable to see that the decision in Anthony v. United States, 57 Ct. Cl. 259, adds light to the present discussion. That was a case of taxation upon automobiles "held and intended for sale by any person." The decision was that, after the vendor had parted with possession of automobiles under conditional sales contracts, those automobiles were no longer " 'held and intended for sale' by the vendor." Obviously, when a vendor has parted with the possession of automobiles under conditional contracts of sale, it cannot be said that he still holds and intends to sell them.