A92A1907. CRAWLEY v. SEXTON.

(427 SE2d 804)

McMURRAY, Presiding Judge.

Plaintiff, Chris Crawley, d/b/a Chris Crawley & Associates, a real estate broker, brought suit against William J. Sexton, a trustee of the Mayo Davis Trust, in the State Court of Houston County. He alleged that Sexton hired him, on October 1, 1990, to present a contract for the purchase of certain real property (located at the intersection of Houston Lake Road and Georgia Highway 96) to William J. Smith III; that he was to be defendant's exclusive agent in purchasing the property; that he prepared a real estate purchase agreement at defendant's direction, offering to purchase the property for $240,000; that defendant signed the agreement and he presented it to Smith, as agent of LeClay, Inc.; and that the contract provided that defendant would pay plaintiff a commission of $10,000. Plaintiff also alleged that

Smith rejected the offer; that, subsequently, the property was conveyed by LeClay, Inc. to defendant and Willie D. Sexton, as trustees of the Mayo Davis Trust for $175,000; that plaintiff was the procuring cause of the sale of the property; and that, pursuant to the contract, defendant is liable to plaintiff in the amount of $10,000. In addition, plaintiff alleged, via amendment, that he is entitled to recover the reasonable value of his broker's services because he brought the seller and purchaser of the property together.

Defendant denied any liability to plaintiff and moved for summary judgment. The motion was based upon the affidavits of defendants Sexton, William J. Smith III, and William J. Smith, Jr. We summarize these affidavits as follows:

Defendant deposed that plaintiff approached him with a proposal to purchase the property in question for $240,000; that under the terms of the proposal, plaintiff would be paid a $10,000 real estate commission if he secured a binding contract on or before October 10, 1990; that plaintiff left defendant's office with a written offer to purchase signed by defendant; that sometime in the middle of October, his earnest money check was dropped off at his office; and that defendant heard nothing more from plaintiff until the spring of the following year when plaintiff presented a $10,000 claim for a real estate commission. Defendant also deposed that on or about November 20, 1990, he received a telephone call from W. J. Smith III, who said he had heard of defendant's interest in the property from Roy Cowart and asked if defendant was still interested; that defendant inquired about the asking price and was told the property could be purchased for $175,000; that defendant was "shocked inasmuch as he knew that [plaintiff] was supposed to have presented a previous offer . . . of $240,000"; that defendant responded that he would discuss the matter with his sons (beneficiaries of the Mayo Davis Trust) and get back in touch with Smith; and that the next week defendant contacted Smith and said he would be interested in purchasing the property "if the dimensions of the property, and the terms of sale and access could be worked out." Finally, defendant deposed that after "extensive negotiations" between LeClay, Inc., the seller, the Mayo Davis Trust, the buyer, the Department of Transportation and Houston County, the deal was closed in the office of Roy Cowart, the attorney representing the seller.

William J. Smith III, deposed that the property in question was owned by LeClay, Inc. and that he is an officer of LeClay, Inc.; that during the months of October and November 1990, and through December 20, 1990, the property was owned by William J. Smith, Jr., Vivian V. Arnold, Ann Smith, and Kyle Arnold, as tenants in common; and that LeClay, Inc. was given an exclusive option to purchase the property. He also deposed that plaintiff came to his office on Oc-

tober 1, 1990 and said he had an offer to purchase a 1.5-acre tract of the property; that he told plaintiff that the property was already under contract for $250,000 and that LeClay, Inc. was not interested in any offer that plaintiff presented; that plaintiff left his office and no further contact was had between plaintiff and LeClay, Inc. Smith further deposed that in early November 1990, LeClay, Inc.'s contract to sell the property "fell apart" and he called defendant to see if he was interested in buying the property; that he got the idea to call defendant because Roy Cowart, his attorney, told him in early 1990 that defendant was a potential buyer; and that he was not aware that defendant was the party behind the offer presented by plaintiff on October 1, 1990. Finally, Smith deposed that LeClay, Inc. was not an agent for any of the prior owners; that, on the contrary, LeClay, Inc. acted solely as a separate entity with the right to negotiate the sale of the property and sell the property for a profit.

William J. Smith, Jr., deposed that he was one of the owners of a 1.7-acre tract of land lying at the northwesterly intersection of Houston Lake Road and Georgia Highway 96; that he owned the property along with his wife, Ann Smith, sister, Vivian V. Arnold, and brother-in-law, Kyle Arnold; that the owners gave LeClay, Inc. an exclusive option to purchase the property on February 17, 1989; that the owners of the property did not deal with plaintiff concerning the sale of the property; and that the owners of the property did not authorize LeClay, Inc. or W. J. Smith III, to be their agent for the sale of the property or of any adjacent property.

In opposition to defendant's motion for summary judgment, plaintiff submitted an affidavit in which he deposed that in January 1990, he met with Roy Cowart to discuss the availability of 1.5 acres of land at the intersection of Houston Lake Road and Georgia Highway 96; that Cowart advised him that he represented the owners of the property; that he then contacted Davis Cosey and defendant and told them about the property; that Cosey and defendant were officers of the Davis Company, Inc. and gave him authority to present an offer to purchase the property for $175,000 on behalf of the Davis Company, Inc.; and that that offer was rejected. He also deposed that later in the year, Jack Smith (William J. Smith III), contacted him and told him that the property was still for sale for $250,000; that he met with Davis Cosey and defendant on August 28, 1990, and they authorized him to present a written offer to purchase the property for $185,000; and that he presented the offer to Jack Smith, who rejected it that day and told him that he had a firm offer of $250,000 "and that he would not pay a broker's commission on a 'backup' contract." Plaintiff further deposed that he met with Davis Cosey and defendant in September 1990 to discuss the purchase of the property and that defendant gave him authority to present an offer of $240,000 on be-

half of the Mayo Davis Trust; that defendant agreed that he would be an exclusive agent for the trust and would pay him a commission of $10,000; that he presented the offer to Jack Smith on October 1, 1990; that Smith informed him that LeClay, Inc. had been given an option to purchase the property, that it had a firm offer on the property, and that it did not need a "back-up" contract; that he returned the earnest money check to defendant; and that, in January 1991, he learned that the property had been sold to the Mayo Davis Trust.

The written offer to purchase was to expire, by its own terms, on October 10, 1990. It was signed by defendant and provided, in part: "[P]laintiff is the exclusive agent of the Buyer and has no agency relationship, written, oral, or implied, with the Seller and/or Seller's agent (if any)." The seller is identified, on the front page of the offer, as William J. Smith, Jr. and Vivian Arnold. However, the names of Smith and Arnold are crossed out on an addendum to the agreement (setting forth special stipulations) and the name "LeClay, Inc." is inserted by hand.

In answers to defendant's discovery requests, plaintiff stated that he inserted the name "LeClay, Inc." on the addendum in Jack Smith's office when he was advised that it had an option to purchase the property. He also admitted that after the offer was rejected by Jack Smith, he took no further action to purchase the property; but that defendant did not prevent him from doing so.

The trial court granted defendant's motion for summary judgment and plaintiff appeals. *Held*:

1. " 'A real-estate agent employed to purchase land is as much entitled to be compensated, in accordance with his contract, as one employed to sell land in behalf of the owner.' *Roberts v. Martin*, 15 Ga. App. 205 (82 SE 813). It was held in *Edwards v. Andrews Bros.*, 24 Ga. App. 645 (101 SE 775): 'In order for a broker to earn a commission on account of the sale of property, he must either have sold it or been the procuring cause of the sale. The owner may sell the property, and if he does not use the broker's labor to help in the sale, he owes the broker nothing, but if a purchaser procured by the broker buys from the owner, even at a less price than that given the broker, the owner would be liable for the broker's commission if the broker's effort was the procuring cause of the sale.' [Cits.]" *Hendrix v. Crosby*, 76 Ga. App. 191, 193-194 (45 SE2d 448). Conversely, when a broker finds property for a principal desiring to purchase, "a broker is entitled to a commission whenever negotiations conducted by him on behalf of the principal culminate in the purchase of the property by the principal or would have so culminated but for the principal's interference. [Cits.]" *Sharp-Boylston Co. v. Lundeen*, 145 Ga. App. 672, 673 (244 SE2d 622).

In the case sub judice, it is clear that the negotiations conducted

by plaintiff did not culminate in defendant's purchase of the property. In fact, plaintiff's negotiations went nowhere. He simply presented an offer which was rejected out of hand; he did nothing more to bring about the purchase of the property. Does a question of fact exist as to whether plaintiff was the procuring cause of the purchase?

"A broker . . . does not make out a case of procuring cause . . . by merely showing that he first located the ultimate [seller], if it further appears that without interference by the owner he was unsuccessful in bringing about [acceptance of] an offer . . . and that the sale was made after he abandoned his effort. [Cits.]" *Tidwell & Yarbrough Realty Co. v. Foster,* 123 Ga. App. 192, 193 (2) (180 SE2d 259). The evidence demonstrates that plaintiff presented an offer to purchase the subject property from the Smiths and Arnolds on behalf of defendant; that the offer was rejected without interference by defendant; that plaintiff did nothing more to procure the purchase and abandoned his effort; that, thereafter, Jack Smith contacted defendant on behalf of LeClay, Inc. and offered to sell the property; and that defendant did not know that plaintiff had presented a proposal to Jack Smith on behalf of LeClay, Inc. Given these facts, it cannot be said that plaintiff was the procuring cause of the purchase.

2. "The evidence thus demonstrating that [plaintiff] was not the procuring cause of the sale, summary judgment in favor of the [defendant] on the quantum meruit count was proper. Compare *First Nat. Bank &c. Co. v. McNatt,* 141 Ga. App. 6 (3) (232 SE2d 356) (1977)." *Booth v. Watson,* 153 Ga. App. 672, 678 (266 SE2d 326).

3. Plaintiff makes the contention that his contract with defendant was an exclusive agency and that, therefore, he was entitled to his commission upon the purchase of the property. This contention is without merit. "The contract between the plaintiff and the defendant being one of exclusive . . . agency, its construction is controlled by the case of *Humphries & Jackson v. Smith,* 5 Ga. App. 340 (2) (63 SE 248), in which this court held: 'Where the principal appoints, not a broker, but an exclusive [purchasing] agent, and agrees to pay a commission upon [the purchase of certain property from certain owners], the agent is entitled to commissions only upon [the consummated purchase], and not upon mere [offers to purchase].' Since the record in this case discloses that no [purchase] of the subject property was consummated within the life of the contract of exclusive . . . agency, the plaintiff was not entitled to a commission under the terms of such contract." *Ragsdale v. Smith,* 110 Ga. App. 485, 487 (1), 488 (138 SE2d 916). It cannot be said that plaintiff is entitled to his commission as an exclusive agent since defendant's offer to purchase was not accepted by October 10, 1990, the last day for acceptance of the offer and it is clear that plaintiff abandoned his efforts to procure the

purchase of the property after that time.
*Judgment affirmed. Cooper and Blackburn, JJ., concur.*

DECIDED FEBRUARY 5, 1993 —
RECONSIDERATION DENIED FEBRUARY 16, 1993 —

*Waymon S. Harrell*, for appellant.
*Geiger & Pierce, James N. Geiger*, for appellee.